**Charles W. KENEY, M.D.,**
**Plaintiff-Appellant,**

v.

**R.C. DERBYSHIRE, M.D., et al.,**
**Defendants-Appellees.**

No. 82–2172.

United States Court of Appeals,
Tenth Circuit.

Oct. 4, 1983.

Bruce E. Pasternack, Albuquerque, N.M. (Michael J. Condon, Albuquerque, N.M., with him on the briefs) of Bruce E. Pasternack, P.C., Albuquerque, N.M., for plaintiff-appellant.

Deborah S. Davis of Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, N.M., for R.C. Derbyshire, M.D., and The New Mexico Board of Medical Examiners, defendants-appellees.

James L. Rasmussen, Albuquerque, N.M. (Jonathan W. Hewes, Albuquerque, N.M.,

with him on the briefs) of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for New Mexico Physicians Mut. Liability Co., defendant-appellee.

Before BARRETT and LOGAN, Circuit Judges, and BOHANON, Senior District Judge *.

BARRETT, Circuit Judge.

Charles W. Keney, M.D., appeals from the district court's dismissal of his action under 42 U.S.C. § 1983. Appellant alleged deprivations of his due process rights by appellees, Dr. R.C. Derbyshire, Secretary-Treasurer of the New Mexico Board of Medical Examiners ("Derbyshire"), the members of the Board individually, and the New Mexico Physicians Mutual Liability Company.[1] Appellant contends on appeal that he was deprived of his due process rights when no probable cause hearing was conducted prior to institution of license revocation proceedings against him. The trial court found no due process violation and dismissed the complaint.

We affirm.

During the Spring of 1980, the New Mexico Board of Medical Examiners ("Board") received a complaint that appellant had improperly prescribed pharmaceutical narcotics for Ted Hodges, a suicide victim who was a known drug addict. The deceased had been appellant's patient for treatment of lower back pain and emotional problems, and had died from a self-inflicted overdose of pharmaceutical narcotics. The Board received the complaint from the victim's mother who stated she had admonished appellant to not prescribe the narcotics for her son as he was a drug addict. In July 1980, the Board sent appellant its Notice of Contemplated Action ("Notice") in which the Board stated that it had sufficient evidence which, if not rebutted or satisfactorily explained, would justify the suspension or revocation of appellant's license to practice medicine in New Mexico. The Notice alleged that appellant prescribed Schedule II Controlled Substances for the purported use of Ted Hodges whom appellant knew or should have known to be a drug addict. The Notice further alleged that appellant delivered to Ted Hodges prescriptions in the names of Tom Taylor and Cynthia Hodges (wife of Tom Taylor) as well as Ted Hodges, and that appellant delivered said prescriptions without having seen or physically examined either Tom Taylor or Cynthia Hodges. Attached to the Notice were copies of 71 prescriptions allegedly prepared by appellant for Ted Hodges, Tom Taylor and Cynthia Hodges between June 28, 1979, and April 1, 1980.

The Notice advised appellant of his right to request a hearing; to be represented by counsel or by a licensed member of his profession, or both; to present all relevant evidence by means of witnesses and books, papers, and documents; to examine all opposing witnesses who appear on any matter relevant to the issues, and to have subpoenas and subpoenas duces tecum issued as of right prior to the commencement of the hearing to compel the attendance of witnesses, and the production of relevant books, papers, and documents. Appellant was also advised that the issuance of such subpoenas after commencement of the hearing rested in the discretion of the Board and that the proceedings would in all other respects be conducted in accordance with New Mexico's Uniform Licensing Act, N.M.S.A., §§ 61–1–1 et seq. (1978).

Appellant requested a hearing, which was held in November 1980. He presented sufficient rebuttal evidence at the hearing for the Board to hold by a vote of 3 to 2 that because "there was a conflict in the evidence presented to the Board ... the Board does not feel disposed to find respondent, Charles W. Keney, M.D., guilty at this time

---

* Of the United States District Court for the District of Oklahoma, sitting by designation.

1. Appellant also sued the New Mexico Board of Medical Examiners as a Board. During the course of the litigation, appellant conceded that the Board as a state agency was immune from suit under the provisions of the Eleventh Amendment, and the charges against the Board were dismissed.

of unprofessional or dishonorable conduct . . . ."[2]

As a result of the Board's actions, appellant filed the instant claim alleging that the Board erred when it failed to institute a probable cause hearing to determine if there was sufficient evidence to believe appellant's conduct was improper. Appellant further asserted that the Board therefore violated his right to due process when it nevertheless initiated a formal hearing to determine if his license should be revoked or suspended. Appellant's claim was dismissed by the district court which held that the due process procedures afforded under the Uniform Licensing Act were sufficient and that there had been no deprivation of a right, privilege or immunity guaranteed by the Constitution or laws of the United States.[3]

In any § 1983 action, the initial inquiry must focus on whether the two essential elements of a § 1983 claim are present: (1) whether the conduct complained of was committed by a person acting under color of law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The first prong of the *Parratt* rule is met in this case as the actions of Derbyshire and the individual members of the Board were clearly under color of state law. Under the second prong, the right alleged to be deprived is due process under the Fourteenth Amendment.

■ The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." A license to practice medicine is a property right deserving constitutional protection, including due process. *Green v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). In *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), the Supreme Court set down a two-step analysis for use in due process cases. The first inquiry is whether a protected liberty or property interest is implicated. As stated above, a license to practice medicine is a protected property interest. The second inquiry requires a weighing or balancing of the particular interests involved in order to determine what form the due process protection should take. Forms of protection vary as "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme

**2.** Appellant did receive a reprimand from the Board for certain record keeping and prescription issuance practices deemed not in accord with good medical practice. However, the reprimand was later reversed on appeal by the Santa Fe County District Court because appellant was not charged in the Notice of Contemplated Action with these practices.

**3.** In addition to his claim that failure to make a probable cause determination constituted a due process violation, Appellant claimed that 1) defendants Derbyshire and New Mexico Physicians Mutual Liability Company ("Physicians Mutual") acted jointly to deprive appellant of due process, 2) Physicians Mutual breached its contract with appellant to provide professional liability insurance, and 3) Derbyshire's interaction with Physicians Mutual constituted a tortious interference of a business relationship. Appellant alleged in his complaint that prior to his hearing, Derbyshire, as secretary-treasurer of the Board, contacted an employee of Physicians Mutual and advised him that Notice had been sent to appellant. Allegedly, Derbyshire told Physicians Mutual that the charges contained in the Notice were true and irrefutable and that—in Derbyshire's words—"We've got him cold." Appellant asserted in his complaint that based on the representations by Derbyshire to Physicians Mutual, Physicians Mutual decided not to renew appellant's policy which left appellant without professional liability insurance for over three months. In February 1981, appellant was able to acquire insurance through another carrier.

Because there was no action under color of state law on the part of Physicians Mutual, the district court dismissed Physicians Mutual from the § 1983 claim. The other two claims asserted by appellant for breach of contract and tortious interference of a business relationship were pendant state claims which were also dismissed when the district court determined there had been no due process violation by Derbyshire or the individual members of the Board under appellant's § 1983 claim.

Court outlined three factors to be considered when determining the specific procedural forms and dictates of due process.

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The private interest deserving constitutional protection in the instant case is appellant's license to practice medicine. The procedures used by the Board, as required by §§ 61–1–1 et seq., included prior notice, a formal hearing, right to counsel, prehearing discovery, affirmative case presentation, witness cross-examination, and employment of rules of evidence. All were designed to prevent the unwarranted revocation or suspension of Plaintiff's license. Section 61–1–4(B)(1) specifically requires that the Board have sufficient evidence before it contemplates taking any action. In the memorandum, opinion and order, the district judge correctly stated:

"A mechanism for a probable cause determination prior to the procedures engaged in this case would do nothing in a practical or theoretical sense to eliminate 'the risk of an erroneous deprivation of such interest.' Such a mechanism may make it more convenient for one charged because it may eliminate the necessity of a full hearing. However, the full hearing with prior notice, the right to counsel, the right to present evidence and cross-examine witnesses are the highest attributes of due process. It is these, and not probable cause determinations, which minimize 'the risk of an erroneous deprivation of such interest,' i.e., the license.

Plaintiff's claim that he is entitled to some sort of additional due process protection such as a probable cause determination is excessive in a license revocation setting.

The administrative burden on the Board by requiring this additional safeguard also makes adoption of plaintiff's suggestion inappropriate. The members of the Board of Medical Examiners are appointed and serve without compensation. Placing additional demands for time and attention on them by requiring some sort of probable cause mechanism when the highest attributes of due process are afforded is unwarranted. The additional burden on the fiscal resources of the state for additional staff and investigators to effectuate this suggested additional safeguard could be substantial."

The trial court then concluded that under the three criteria outlined in *Mathews,* there had been no deprivation of a right, privilege or immunity guaranteed by the Constitution or laws of the United States. The decision of the trial court is further supported by *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Accordingly, WE AFFIRM.