Henri A. RATHLE, Plaintiff,

v.

Carl A. GROTE, Jr., Jeff H. Beard, J. Kendall Black, Ed. W. Branyon, William B. Bridges, Ron Henderson, William B. Lazenby, C.A. Lightcap, Ira A. Patton, W. Earle Riley, William Leitner, R. Ross McBryde, and Kenneth C. Yohn, as Members of the Board of Medical Examiners of the State of Alabama; Leon C. Hamrick, William F. deShazo, Jerry N. Gurley, E. Gaylon McCullough, and T.C. Nolan, as Members of the Medical Licensure Commission of the State of Alabama; Stephen C. Lauten, William P. Coats, Harry S. Pond, David L. McCullough, Edward L. Bryant, George Sutton, Enoch M. Toler, Richard H. Esham, Samuel P. Marshall, Daniel T. McCall, III, David M. Mullins, Charles E. Shopfner, S. Timothy String, and L. Steven Weinstein, Defendants.

Civ. A. No. 82–770–N.

United States District Court,
M.D. Alabama, N.D.

April 5, 1984.

Alvin T. Prestwood and Claude P. Rosser, Jr., Prestwood & Rosser, Montgomery, Ala., D. Richard Bounds, Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, Ala., for plaintiff.

Mark McDonald, Medical Licensure Com'n, Montgomery, Ala., for Hamrick, de-Shazo, Gurley, McCullough and Nolan.

Charles A. Stakely, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for Lauten, Coats, Pond, McCullough, Bryant, Sutton, Toler, Esham, Marshall, McCall, Mullins, Shopfner, String and Weinstein.

Wendell R. Morgan, Montgomery, Ala., for Members of the Bd. of Medical Examiners.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This lawsuit brought under 42 U.S.C.A. § 1983 is now before the court on countermotions for summary judgment.[1] The issue presented is whether the disciplining of a physician by the Alabama Medical Licen-

---

1. The court's jurisdiction has been properly in-      voked pursuant to 28 U.S.C.A. §§ 1331, 1343.

sure Commission violated the due process and equal protection clauses of the fourteenth amendment to the U.S. Constitution. For reasons which follow, the court holds that it did not.

## I.

Section 34–24–361 of the 1975 Ala.Code (Supp.1983) provides a two-tiered regulatory structure for the receipt, investigation and disposition of complaints against licensed physicians. First, there is the Alabama Board of Medical Examiners, the state body authorized to receive and investigate complaints against a licensed physician; and second, there is the Alabama Medical Licensure Commission, the state body authorized to revoke or suspend a physician's license after a hearing.

Section 34–24–360 of the 1975 Ala.Code (Supp.1983) provides a list of "acts and offenses" warranting the suspension or revocation of a physician's license.[2] Among the acts and offenses listed are "(3) practicing medicine ... in such a manner as to endanger the health of the patients of the practitioner" and "(8) Distribution by prescribing, dispensing, furnishing, or supplying of controlled substances to any person or patient for any reason other than a legitimate medical purpose."

---

**2.** Section 34–24–360 provides in relevant part as follows:

The medical licensure commission shall have the power and duty to suspend for a specified time, to be determined in the discretion of the commission, or revoke any license to practice medicine or osteopathy in the state of Alabama whenever the licensee shall be found guilty on the basis of substantial evidence of any of the following acts or offenses:

(1) Fraud in applying for or procuring a certificate of qualification to practice medicine or osteopathy or a license to practice medicine or osteopathy in the state of Alabama;

(2) Immoral, unprofessional or dishonorable conduct as defined in the rules and regulations promulgated by the commission;

(3) Practicing medicine or osteopathy in such a manner as to endanger the health of the patients of the practitioner;

(4) Conviction of a felony; a copy of the record of conviction, certified to by the clerk of the court entering the conviction, shall be conclusive evidence;

(5) Conviction of any crime or offense which reflects the inability of the practitioner to practice medicine or osteopathy with due regard for the health or safety of his patients; a copy of the record of conviction, certified to by the clerk of the court entering the conviction, shall be conclusive evidence;

(6) Conviction for any violation of a federal or state law relating to controlled substances; a copy of the record of conviction, certified to by the clerk of the court entering the conviction, shall be conclusive evidence;

(7) Use of any untruthful or deceptive or improbable statements concerning the licensee's qualifications or the effects or results of his proposed treatment;

(8) Distribution by prescribing, dispensing, furnishings, or supplying of controlled substances to any person or patient for any reason other than a legitimate medical purpose;

(9) Gross malpractice or repeated malpractice or gross negligence in the practice of medicine or osteopathy;

(10) Division of fees or agreement to split or divide the fees received for professional services with any person for bringing or referring a patient;

(11) Performance of unnecessary diagnostic tests or medical or surgical services;

(12) Charging fees determined by the commission to be grossly excessive;

(13) Aiding or abetting the practice of medicine by any person not licensed by the commission;

(14) Conviction of fraud in filing medicare or medicaid claims or conviction of fraud in filing claims to any third party payor; a copy of the record of conviction, certified to by the clerk of the court entering the conviction, shall be conclusive evidence;

(15) The suspension or revocation by another state of a license to practice medicine, based upon acts by the licensee similar to acts described in the section; a certified copy of the record of suspension or revocation of the state making such a suspension or revocation is conclusive evidence thereof;

(16) Refusal to appear before the state board of medical examiners after having been formally requested to do so in writing by the executive director of the board;

(17) Making any fraudulent or untrue statement to the commission or to the state board of medical examiners;

(18) The removal of staff privileges of a licensee by a hospital in this or any other state when such action is related to medical incompetence, moral turpitude, or drug or alcohol abuse;

(19) Being unable to practice medicine or osteopathy with reasonable skill and safety to patients by reason of illness, inebriation, excessive use of drugs, narcotics, alcohol, chemicals or any other substance, or as a result of any mental or physical condition.

In 1981, the Medical Society of Mobile County, Alabama informed the Alabama Board of Medical Examiners that Henri A. Rathle, a licensed physician practicing in the county, was improperly and dangerously prescribing certain drugs in his treatment of two patients for obesity. The Society had already done a preliminary investigation and had informed Rathle of its concern about his drug treatment of the two patients.

Pursuant to its investigatory authority, the Board notified Rathle that it was investigating his alleged "improper prescribing and dispensing of controlled substances and the practice of medicine in such a manner as to endanger the health of patients," practices prohibited by subsections 3 and 8 of section 34–24–360. Rathle appeared before the Board and testified about a variety of matters, including the nature of his practice, his diagnostic procedures, the kinds and quantities of certain drugs that he dispensed, his understanding of the proper use of these drugs, and, in particular, his drug treatment of the two patients for obesity. After its investigation, the Board filed a formal complaint with the Medical Licensure Commission. The complaint charged Rathle with violations of subsections 3 and 8 of section 34–24–360, and it specifically referred to the two patients whom he had treated for obesity.

The Medical Licensure Commission conducted a hearing limited to the charged violations and Rathle's drug treatment of the two patients for obesity. Assisted by counsel, Rathle presented extensive evidence in his own behalf and cross-examined witnesses against him. The Commission adjudged that Rathle had violated subsection 3, but suspended the imposition of penalties on the condition that Rathle:

1) Use thyroid medication only after appropriate clinical and laboratory tests indicate the advisability of such use;

2) Maintain accurate records of drug dispensing and prescribing;

3) Submit records of patients being treated for obesity to Dr. William Daniels, Mobile, or any other physician agreeable to the Commission, for review and report by said physician to the Commission for a period of six months from the date of this Order;

4) Provide the Medical Licensure Commission with evidence that he has successfully completed no less than 30 hours of approved continuing medical education in instruction related to obesity, endocrinology, and/or the treatment of thyroid conditions within 12 months from the date of this Order;

5) That Dr. Rathle provide the patients for whom he elects to prescribe sympathomimetic and/or thyroid medication for treatment of obesity a written statement containing:

a) potential dangers and side effects of such medication;

b) the medical evidence that long term caloric reduction without medication is a safer and at least equally effective treatment of obesity for the long term results;

c) a place for the patient's signature indicating he/she has read the statement and understands it.

Rathle then brought this lawsuit against the members of the Medical Licensure Commission, the Board of Medical Examiners and the Mobile County Medical Society, and against two other private physicians. His basis for including the members of the Society and the two private physicians is that they participated in the initiation of the disciplinary proceedings against him. Rathle is seeking declaratory and injunctive relief against all defendants and damages against the members of the Society and the two private physicians.

In a scattergun approach, he has presented an array of claims based on the due process and equal protection clauses of the fourteenth amendment to the U.S. Constitution.[3]

---

**3.** The defendants contend that the doctrines of "exhaustion" and "*Younger* absention" apply in this case. Their contention is meritless. *Patsy*

*v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Ellis v. Dyson,* 421 U.S. 426, 432–33, 95 S.Ct.

## II.

■ It is now without question that "a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there. It is a vital part of a state's police power. The state's discretion in that field extends naturally to the regulation of all professions concerned with health." *Barsky v. Board of Regents of University of the State of New York*, 347 U.S. 442, 449, 74 S.Ct. 650, 654, 98 L.Ed. 829 (1954). *See Simopoulos v. Virginia*, — U.S. —, 103 S.Ct. 2532, 76 L.Ed.2d 755 (1983); *Bigelow v. Virginia*, 421 U.S. 809, 827, 95 S.Ct. 2222, 2235, 44 L.Ed.2d 600 (1975); *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 164–67, 94 S.Ct. 407, 412–14, 38 L.Ed.2d 379 (1973). This power is not unbridled, however, but is subject to constitutional restraint.

### A. Vagueness Claim

■ Rathle claims that subsection 3 of section 34–24–360 is unconstitutionally vague. In determining whether a statute is unconstitutionally vague, a court must not consider the statute in isolation and abstraction. Instead, the constitutional standard for vagueness is "the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important." *American Communications Ass'n v. Douds*, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950).

The health sciences are dynamic and, as a result, it is impossible to compile a list of every conceivable form of "acceptable" and "unacceptable" medical practice. Courts have therefore recognized that "statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice." *United States v. Collier*, 478 F.2d 268, 272 (5th Cir.1973). *See also Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201

1691, 1695, 44 L.Ed.2d 274 (1975); *Cate v. Oldham*, 707 F.2d 1176, 1183 (11th Cir.1983).

The defendants have also raised various immunity defenses. In view of the disposition of

(1973); *United States v. Vuitch*, 402 U.S. 62, 91 S.Ct. 1294, 12 L.Ed.2d 601 (1971). Instead, the health professions are regulated by statutes of general terminology, complemented by continually evolving and changing non-statutory standards fashioned to meet contemporary norms.

■ Section 34–24–360 and the record before this court reflect such a regulatory scheme for the Alabama medical profession. Though section 34–24–360 lists in broad terminology those medical practices which are unacceptable and prohibited by the state, it is supplemented by specific contemporary standards and norms. Therefore, considering subsection 3 in the context of section 34–24–360 and in conjunction with medical norms and standards, this court concludes that the subsection sufficiently informs physicians of the standards and norms by which they are to conduct themselves and their practices. *See, e.g., Hoke v. Board of Medical Examiners of the State of North Carolina*, 395 F.Supp. 357, 362 (W.D.N.C.1975) (three-judge court); *Association of American Physicians and Surgeons v. Weinberger*, 395 F.Supp. 125, 138 (N.D.Ill.) (three-judge court), *affirmed*, 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975). Subsection 3 is not unconstitutionally vague.

### B. Overbreadth Claim

■ Rathle claims that subsection 3 is unconstitutionally overbroad because it substantially exceeds its "plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). As already observed, when viewed in its statutory context and in conjunction with contemporary medical norms and standards, the subsection proscribes only unacceptable medical practices. The subsection is therefore reasonable and, accordingly, falls within the legitimate sweep of the state's authority. *Simopoulos v. Virginia*, — U.S. —, 103 S.Ct. 2532, 76

this lawsuit, the court does not address these defenses.

L.Ed.2d 755 (1983); *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 164–67, 94 S.Ct. 407, 412–14, 38 L.Ed.2d 379 (1973). Subsection 3 is not unconstitutionally overbroad.[4]

## C. Equal Protection Claim

■ Rathle claims that in applying subsection 3 the defendants unconstitutionally denied him equal protection of the laws. *See Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981) (Unit B) ("the essence of the equal protection requirement is that the state treat all those similarly situated similarly.") He contends that the subsection sweeps broadly, encompassing both acceptable and unacceptable medical practices, but that only he has been subjected to discipline under the subsection. Rathle's claim requires only a brief response. Subsection 3, as already noted, proscribes only unacceptable medical practices; and the evidence fails to reflect that another physician, who engaged in unacceptable practices similar to Rathle's, was not similarly disciplined. Rathle has not been denied equal protection of the laws.

## D. Other Claims

■ Rathle has presented several other claims based on the due process clause. First, he claims that he was not given adequate notice of the charges against him. The undisputed evidence refutes this. From beginning to end, the statutory violations charged, the treatment being challenged, and the names of the two patients whose treatment formed the basis for the charges, were known to him and remained unchanged. There were no surprises. He therefore received "fair notice as to the reach of the grievance procedure and the precise nature of the charges against" him, *In re Ruffalo,* 390 U.S. 544, 552, 88 S.Ct. 1222, 1226 (1968). His claim of inadequate notice is disingenuous.

■ Second, he claims that the Medical Licensure Commission failed to inform him of the reasons for its decision. *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963). This claim is also meritless. He was informed of and is fully aware of the reasons for the Commission's decision.

■ Third, he claims that the members of the Commission were philosophically predisposed to find against him. This claim is also without merit. A physician charged with unacceptable medical practices does not have a due process right to have his case determined by persons of any particular medical persuasion. The philosophical bent of the members of the Commission was therefore immaterial. Of course, if the members had been factually predisposed, the issue before the court would be different; but there is no evidence of such predisposition.

■ Finally, he claims that the decision of the Commission was arbitrary and capricious. This claim is also without merit. The decision of the Commission was supported by the evidence before it and was therefore reasonable.

## III.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The record now before the court on counter-motions for summary judgment does not reflect a genuine dispute as to any material fact; and, for the reasons stated above, the defendants are entitled to judgment as a matter of law. Accordingly, an appropriate judgment will be entered in favor of all defendants and against the plaintiff.

---

**4.** Rathle marginally implicates the first amendment in his overbreadth argument in his brief. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Subsection 3 proscribes only unacceptable medical practices; it does not circumscribe a physician's freedom, either singly or in group, to advocate or oppose the acceptance of any form of medical treatment. The subsection does not offend the first amendment.