**Emerson EMORY, Appellant,**

v.

**TEXAS STATE BOARD OF MEDICAL EXAMINERS, et al., Appellee.**

No. 84–1353
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1984.

---

Emerson Emory, M.D., pro se.

Fred Weldon, Asst. Atty. Gen., Dallas, Tex., Lou McCreary, Chief Asst. Atty. Gen., Austin, Tex., for appellee.

Before GEE, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Emerson Emory, M.D., appeals, *pro se,* from the dismissal of his civil rights suit under 42 U.S.C. § 1983. Emory sued the Texas State Board of Medical Examiners (the Board) and two of its former officers for damages as well as injunctive and declaratory relief, alleging that they unconsti-

tutionally imposed a one-year suspension of his license to practice medicine in Texas. Finding dismissal of the suit proper, we affirm.

Emory was convicted on various counts of violating federal drug laws. This Court affirmed his conviction, *United States v. Emory,* 629 F.2d 1347 (5th Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 343 (1981), and he commenced his prison term in June 1981. Later that month, the Board held a hearing in his absence and cancelled his license. Emory appealed to the state district court which, on the Board's motion, remanded for rehearing. Upon Emory's release from prison, the Board held an evidentiary hearing which Emory attended. The Board ordered the suspension of Emory's medical license for one year. After his suspension period, Emory's medical license would be automatically reinstated.

The state district court affirmed the suspension, but stayed its effect until January 13, 1984. Emory then appealed to the Texas Court of Appeals. He also filed suit in federal district court. Following an evidentiary hearing on the merits, the federal district court dismissed the action, finding that the eleventh amendment barred all relief against the Board and precluded damages against two of its erstwhile members.

I.

Emory does not dispute that the Board is a state agency, nor does he contend that Texas has consented to be sued in a federal court. Thus, the eleventh amendment bars all relief sought against the Board. *Clay v. Texas Women's University,* 728 F.2d 714, 715–16 (5th Cir.1984). Further, to the extent any damage recovery would necessarily come from the state treasury, monetary relief against state agency officials is also precluded by the eleventh amendment. *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 557 (5th Cir.1982). However, the eleventh amendment does not foreclose a plaintiff's

claims for prospective relief based on alleged unconstitutional actions of individual state officials. *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, ——, 104 S.Ct. 900, 909, 79 L.Ed.2d 67, 78 (1984). The same is true as to damage claims against individual state officials which would not necessarily be paid out of state coffers. *See United Carolina Bank,* 665 F.2d at 562.

### A. *Due Process, Equal Protection and Choice of Sanction*

Under its statutory grant of authority, the Board is empowered to determine whether to probate, suspend or cancel the license of a Texas doctor who has been convicted of a felony. Emory argues that the absence of written rules and regulations guiding the Board on which sanction to apply violates due process.

■ The district court concluded that the Board utilized the severity of the sentence as a major factor informing its choice of sanction. "Where a physician is incarcerated, the Board generally cancels the license. In receiving a suspension, Emory was treated less severely by the Board than most physicians in similar circumstances." Record Vol. II, at 21; *see id.* at 23. These findings are not clearly erroneous.

■ The determination of which sanction best serves statutory policies is committed to the administrative agency's discretion. *Wayne Cusimano, Inc. v. Block,* 692 F.2d 1025, 1030 (5th Cir.1982). Texas statutory law empowered the Board to select the license suspension option in light of Emory's felony drug conviction. Consequently, the Board's choice of sanction did not offend the federal constitution.

■ Emory's equal protection challenge likewise fails. All Texas doctors convicted of a felony are subject to possible license probation, suspension or cancellation, in the Board's discretion. Evidence before the district court established that the Board almost always cancels the medical licenses of incarcerated drug offenders. In receiving suspension, a lesser sanction, Emory

was placed in a better position than the overwhelming majority of doctors similarly situated. Some doctors convicted on charges apparently unrelated to controlled substances have received more lenient treatment than Emory. Nonetheless, Emory has not shown the statutory scheme, or the Board's application of it, to be irrational. *See Schanuel v. Anderson,* 708 F.2d 316, 320 (7th Cir.1983) (classifications of ex-offenders).

### B. *Double Jeopardy*

■ Emory next contends that suspension of his medical license because of his felony conviction, after he had already served a prison term for that offense, amounted to double punishment proscribed by the Constitution. The fifth amendment, as applicable to the states, prohibits Emory from being twice subjected to *criminal* punishment. Imposition of both criminal and civil sanctions for the same acts or omissions does not violate the double jeopardy clause. *Halvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Thus, the question is whether administrative suspension of his medical license constitutes a criminal, or "essentially criminal," sanction. *See Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975).

Medical license revocation proceedings are highly penal in the sense that valuable rights are at stake, *Korndorffer v. Texas State Board of Medical Examiners,* 448 S.W.2d 819, 824 (Tex.Civ.App.1969), *rev'd in part on other grounds,* 460 S.W.2d 879 (Tex.1970), but revocation of privileges voluntarily granted is "characteristically free of the punitive criminal element." *Helvering,* 303 U.S. at 399 & n. 2, 58 S.Ct. at 633 & n. 2. Despite the sanction's severity, its character is remedial. *Id.*

Consequently, Emory has not twice received criminal punishment for the same offense. *See Paine v. Board of Regents of University of Texas System,* 355 F.Supp. 199, 203 (W.D.Tex.1972), *aff'd,* 474 F.2d 1397 (5th Cir.1973); *United States v. Cordova,* 414 F.2d 277 (5th Cir.1969).

### C. *Ex Post Facto Law* (Retroactivity)

An ex post facto law punishes conduct that was innocent when done. *United States v. Brown*, 555 F.2d 407, 417 (5th Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). At the time of Emory's 1979 felony conviction, the Board was authorized to suspend his license under Tex.Rev.Civ.Stat.Ann. arts. 4505(2) and 4506 (Vernon 1976). The Board was permitted to take the same action for the same conduct after this statute was replaced in 1981 by Tex.Rev.Civ.Stat. Ann. art. 4495b, §§ 2.09(h) and 3.08(2) (Vernon Supp.1984). A comparison of the statutes reveals no substantive change affecting Emory's suspension. Indeed, at no pertinent time was Emory's felony conviction "innocent" with respect to his medical license.

### II.

Finally, Emory complains that the district court erred in refusing him leave to amend his complaint to join remaining members of the Board. The court denied the motion after hearing evidence bearing on Emory's constitutional claims. Finding a "fail[ure] to demonstrate a substantial likelihood of success on the merits[,]" the court concluded an amendment would be "fruitless." Rejection of Emory's motion resulted in dismissal without prejudice of his claims against the two former Board members.

Since the defendants had already filed a responsive pleading, leave of the court was required when Emory sought to amend his complaint. Fed.R.Civ.P. 15(a). This Court reviews the district court's decision to deny the amendment for abuse of discretion. If the amendment would be futile, it may be disallowed. *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir.1980), *cert. de-*

*nied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981) (citations omitted).

As discussed previously, Emory's claims of constitutional violations lack substance. Thus, the result will not be altered by the mere addition of other Board members, past or present. Proposed new parties stand in no different position than the two Board members already named in this suit, who participated in the suspension, but did not infringe Emory's constitutional rights. Accordingly, the court's rejection of Emory's motion to amend and its dismissal of the two former officers was not an abuse of discretion.

The judgment of the district court is therefore affirmed in all respects.*

---

* We note that Emory raises several claims for the first time on appeal. Since these contentions were not fairly presented to the district court, we may not consider them at this juncture. Further, we decline to entertain Emory's attempt to revive the unlitigated race discrimina- tion issue on this appeal. Finally, because Emory has not established a likelihood of success on his constitutional deprivation claims, we do not reach his contention that the district court improperly refused to issue an injunction.