**Frank WALTZ, M.D., Plaintiff,**

v.

**Charles E. HERLIHY, Jr., M.D.; Leon C. Hamrick, M.D.; Patricia Shaner; Larry Dixon; Alabama Board of Medical Examiners; Alabama Medical Licensure Commission, Defendants.**

**Civ. A. No. 87–1259–BH–M.**

United States District Court,
S.D. Alabama, S.D.

March 29, 1988.

Frank Waltz, M.D., pro se.

James B. Galloway, Gulfport, Miss., J.P. Courtney, III and Stephen D. Springer, Mobile, Ala., for defendants.

## MEMORANDUM OPINION AND ORDER

HAND, Chief Judge.

This cause is before the Court on defendants' motion to dismiss plaintiff's complaint, as amended on December 17, 1987.[1] Plaintiff Frank Waltz, M.D., (Waltz) originally filed a *pro se* complaint on October 20, 1987 in the United States District Court for the Southern District of Mississippi alleging under, 42 U.S.C. § 1983, a deprivation of a property interest without due process of law in connection with the suspension of his license to practice medicine in Alabama by the Alabama Board of Medical Examiners. On November 23, 1987, the cause was transferred to this Court pursuant to 28 U.S.C. § 1631. Subsequently, this Court granted leave to plaintiff to file an amended complaint which, as filed on December 17, 1987, added the Alabama Board of Medical Examiners and the Alabama Medical Licensure Commission as party defendants and factually incorporated the revocation of plaintiff's license to practice medicine after a hearing conducted by the defendants in November 25, 1987. In this litigation, plaintiff seeks both damages and injunctive and declaratory relief.

■ Defendants state four bases for their motion to dismiss. Defendants first contend that they are immune from the claims made against them by virtue of the doctrine of sovereign immunity. Defend-

ants' contention is in part correct. It is evident that the Alabama Medical Licensure Commission and the Alabama Board of Medical Examiners are state agencies which have not consented to be sued in a federal court. Thus, the Eleventh Amendment bars all relief sought against these state agencies. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67, 78 (1984). *See also, Emory v. Texas State Board of Medical Examiners,* 748 F.2d 1023, 1025 (5th Cir.1984); *Clay v. Texas Women's University,* 728 F.2d 714, 715 (5th Cir. 1984). The Court, therefore, concludes that defendants' motion to dismiss is due to be granted to the extent it seeks dismissal of the complaint against the Alabama Medical Licensure Commission and the Alabama Board of Medical Examiners.

■ In addition, the Eleventh Amendment clearly precludes monetary relief against state agency officials in their official capacity inasmuch as such relief would necessarily come from the state treasury. *Pennhurst, supra,* 465 U.S. at 101–102, 104 S.Ct. at 908–909; *Emory,* 748 F.2d at 1025; *Clay,* 728 F.2d at 715. As applied to the case at bar, the Eleventh Amendment precludes plaintiff's claims against the individual defendants for damages to the extent such claims are based upon the actions of these defendants taken in their official capacities as members, agents, employees, or consultants of the defendant state agencies. The Eleventh Amendment does not, however, bar claims for prospective injunctive relief against state agency officials which are based on alleged unconstitutional actions of the officials whether taken in their individual or official capacities. *Pennhurst, supra,* 465 U.S. at 102–103, 104 S.Ct. at 909; *Clay,* 728 F.2d at 715–716. Nor does the Eleventh Amendment bar claims for monetary relief against state agency officials acting in their individual capacities inasmuch as such claims would not necessarily be paid out of the state treasury, *Emory, supra,* 748 F.2d at 1026.

1. In the alternative, defendants move the Court to require plaintiff to make a more definite statement of his claims. The Court finds it unnecessary to address this aspect of defendants' motion.

Defendants next contend that dismissal is required because the plaintiff has failed to exhaust available administrative remedies provided under Alabama law, specifically Ala.Code. § 34–24–367 (1975).[2] This contention, as argued by the defendants, is without merit. Despite the imprecision of this *pro se* plaintiff's pleadings, this action is clearly one brought pursuant to 42 U.S.C. § 1983 since the plaintiff alleges a deprivation of a property interest without due process of law in violation of the Fourteenth Amendment.[3] It has for some time been abundantly clear that exhaustion of state administrative or judicial remedies is not a prerequisite to an action under 42 U.S.C. § 1983. *See, e.g., Patsy v. Florida Board of Regents*, 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172, 178 (1982), citing *inter alia McNeese v. Board of Education*, 373 U.S. 668, 671–673, 83 S.Ct. 1433, 1435–1436, 10 L.Ed.2d 622 (1963). *See also, Alacare, Inc.–North v. Baggiano*, 785 F.2d 963, 965 (11th Cir.1986).

Defendants' contention that this Court lacks subject matter jurisdiction is likewise without merit. Such a contention is obviously predicated upon defendants' failure either to themselves recognize or to accept a prior court's recognition that the complaint asserts an action under 42 U.S.C. § 1983.

Defendants finally contend that plaintiff's complaint fails to state a claim upon which relief can be granted.[4] In connection with this contention, defendants principally repeat their assertions of immunity, failure to exhaust available state judicial remedies and the absence of federal question jurisdiction. For the reasons stated at sufficient length above, these assertions are without merit. Defendants do add, however, that if a federal question can be identified within the complaint, "the suspension and revocation proceedings provided by Alabama law comply with the requirements of the U.S. Constitution." (Defendants' Brief in Support of Motion to Dismiss at p. 7.) It is upon this ground that the Court concludes that plaintiff's complaint against the individually named defendants is due to be dismissed. With respect to this aspect of defendants' motion, the Court finds it appropriate to consider matters outside the pleadings, specifically certain documents filed by the plaintiff as exhibits during the course of this litigation. The Court, therefore, will hereafter treat defendants' motion as one for summary judgment pursuant to Fed.R.Civ. P. 56. For the reasons set forth below, the Court concludes that there exists no genuine issue of material fact and that defendants are entitled to judgment as a matter of law.

Plaintiff does not dispute that his license to practice medicine in Alabama was suspended and then revoked pursuant to the provisions of Ala.Code § 34–24–361 and § 34–24–360 (1975). Specifically, plaintiff admits that his license was suspended pursuant to an order entered by the Alabama Medical Licensure Commission (Commission) September 23, 1987 (Plaintiff's Exhibit D to the Amended Complaint filed December 17, 1987) and revoked pursuant to an order entered by the Commission on January 8, 1988 (Plaintiff's Exhibit G to the

**2.** Ala.Code § 34–24–367 provides, in pertinent part:

Any order of the Medical Licensure Commission suspending or revoking a license to practice medicine ... shall have immediate effect and shall not be stayed or held in abeyance by any court.... Notwithstanding any other provision to the contrary, any action commenced for the purpose of seeking judicial review of the administrative decisions of the Commission, including a writ of mandamus or judicial review pursuant to the Alabama Administrative Procedures Act, Chapter 22 of Title 41, must be filed, commenced, and maintained in the Circuit Court of Montgomery County.

**3.** The essence of plaintiff's cause of action has previously been identified by the United States District Court for the Southern District of Mississippi, the transferor court, in its order of November 23, 1987.

**4.** Defendants' contention that the complaint fails to conform with the pleading requirements of Fed.R.Civ.P. 8 and 10(b) and is incomprehensible, vague, ambiguous and unintelligible need not be addressed. Such a contention relates more appropriately to defendants' alternative motion for a more definite statement. *See*, n. 1, *supra.*

Motion for Emergency Relief filed January 20, 1988). These orders indicate that plaintiff's license was suspended and subsequently revoked on grounds that plaintiff was first suspected of and then found to have violated Ala.Code § 34–24–360(8) and (19).[5] Plaintiff does not aver in his complaint that the Commission failed in any manner to comply with the procedure set forth in Ala.Code § 34–24–361, which provides, in pertinent part:

(a) The state board of medical examiners on its own motion may investigate any evidence which appears to show that a physician ... holding a certificate of qualification to practice medicine ... in the state of Alabama is or may be guilty of any of the acts, offenses, or conditions set out in section 34–24–360.

(b) Any physician ... holding a certificate of qualification to practice medicine ... in the state of Alabama shall and is hereby required to, and any other person may, report to the board or the commission any information such physician ... or other person may have which appears to show that any physician ... holding a certificate of qualification to practice medicine ... in the state of Alabama may be guilty of any of the acts, offenses or conditions set out in section 34–24–360, and any physician ... or other person who in good faith makes such a report to the board or to the commission shall not be liable to any person for any statement or opinion made in such report.

(c) If in the opinion of the board it appears that such information provided to it under the provisions of this section may be true, the board may request a formal interview with the physician....

\* \* \* \* \* \*

**5.** Ala.Code § 34–24–360 (1975) provides, in pertinent part:

The medical licensure commission shall have the power and duty to suspend for a specified time, to be determined in the discretion of the commission, or revoke any license to practice medicine ... in the state of Alabama whenever the licensee shall be found guilty on the basis of substantial evidence of any of the following acts or offenses:

\* \* \* \* \* \*

(e) Any proceeding for suspension or revocation of a license to practice medicine ... in the state of Alabama shall be conducted in accord with the following procedures:

(1) A written complaint signed by any member of the state board of medical examiners, any duly licensed physician ..., the executive officers of the commission, or any other person shall be filed with the medical licensure commission.

(2) The executive officer of the commission shall set a date for the hearing of said complaint, shall notify the physician ... against whom the complaint was filed of the time and place of said hearing and shall forward to such physician ... a copy of the complaint filed against him.

(3) Such notice shall be served upon the physician ... against whom the complaint was filed at least 20 days prior to the hearing date.

(4) Said notice may be served by any sheriff of the state of Alabama or by any person designated by the executive officer of the commission, and if served by a person designated by the executive officer, the return of service shall be sworn to by said person before some officer authorized to administer oaths.

\* \* \* \* \* \*

(6) The investigation shall be held with as little publicity as practicable, consistent with a fair and impartial hearing, but the physician ... against whom the complaint has been filed may elect to have the hearing in public.

(7) At the hearing the physician ... against whom the complaint has been

(8) Distribution by prescribing, dispensing, furnishing, or supplying of controlled substances to any person or patient for any reason other than a legitimate medical purpose;

\* \* \* \* \* \*

(19) Being unable to practice medicine ... with reasonable skill and safety to patients by reason of illness, inebriation, excessive use of drugs, narcotics, alcohol, chemicals or any other substance, or as a result of any mental or physical condition.

filed, shall have the right to be represented by counsel and shall have the right to call any witnesses germane to the issues under consideration.

\* \* \* \* \* \*

(9) The commission shall have the right to determine all questions as to the sufficiency of the complaint, as to procedure and as to the admissibility and weight of evidence.

\* \* \* \* \* \*

(f) The commission shall, temporarily, suspend the license of a physician ... without a hearing simultaneously with the institution of proceedings for a hearing provided under this section on the request of the state board of medical examiners if the board finds that evidence in its possession indicates that the physician's ... continuation in practice may constitute an immediate danger to his patients or to the public.

\* \* \* \* \* \*

(h) Subsequent to the holding of a hearing and the taking of evidence by the commission as provided for in this section the commission shall request and consider but not be bound by a recommendation from the state board of medical examiners. After receipt of the board's recommendation, if the commission finds that a physician ... is guilty of any of the acts, offenses or conditions enumerated in section 34–24–360, the commission may take any of the following actions or any combinations of the following actions:

(1) Enter a judgment and impose a penalty.

\* \* \* \* \* \*

(i) Complaints submitted for hearing before the medical licensure commission under this section or before the board of medical examiners or testimony with respect thereto shall be absolutely privileged and no law suit predicated thereon may be instituted.

Ala.Code § 34–24–361 (1975 & Supp.1987). Plaintiff does not contend, nor could he, that the administrative complaint issued by the Commission (Plaintiff's Exhibit D to the Amended Complaint) failed to apprise him of the exact nature of the charges brought against him. It is also evident that the plaintiff was informed in the notice setting the matter for a November 25, 1987 hearing that he had:

[T]he right at this hearing to be represented by counsel at your own expense, to cross-examine any witness who may testify against you, to examine documents presented to the Commission, and to present any evidence touching upon your qualifications to practice medicine in the state of Alabama.

(Plaintiff's Exhibit D to the Amended Complaint). Plaintiff does not allege that the Commission circumscribed any of these rights, rights which are clearly fundamental to due process. Plaintiff's contention that he was denied due process of law is, instead, principally predicated upon: (1) the Commission's failure to conduct a hearing prior to the suspension of his license to practice medicine on September 24, 1987; (2) the Commission's failure to conduct a hearing until November 25, 1987, more than 30 days after the suspension of his license; (3) the Commission's reliance upon misinformation, particularly the reports dated September 11, 1987 and November 4, 1987 of Dr. Charles E. Herlihy, Jr., a psychiatrist who examined plaintiff at the apparent behest of the Alabama Board of Medical Examiners (Plaintiff's Exhibit B to the Amended Complaint); (4) the failure of the November 25, 1987 hearing to comport with the requirements of due process in that it was not conducted by an independent tribunal and thus, allegedly, not conducted by impartial decisionmakers;[6] and (5) the vagueness and/or overbreadth of Ala.Code § 34–24–360, specifically subsections (8) and (19).

---

**6.** Plaintiff specifically contends that the November 25, 1987 hearing was conducted by "a Kangaroo Court" made up of "Board hireling[s]" and that he is entitled under the Constitution to select the forum in which the Commission's complaint could be adjudicated, including a federal district court.

■ The Court has considered plaintiff's claim that subsections (8) and (19) of Ala. Code § 34–24–360 are unconstitutionally vague and/or overbroad, a claim clearly challenging the Commission's compliance with the requirements of substantive due process, to-wit: the guaranty that no person shall be deprived of his property for arbitrary reasons. Plaintiff specifically challenges these subsections on the grounds that the state has failed in its statute: (1) to delineate in subsection (8) the "legitimate medical purpose" for which each controlled substance prescribed by plaintiff could be prescribed and the acceptable dosage relative to such prescriptions; and (2) to limit the application of subsection (19) to abuses involving substances foreign to the body as opposed to incorporating substances such as Synthroid, which he contends is a thyroid extract and "not properly classified along with tranquilizer/pain medications, which all introduce foreign substances into the body." (Plaintiff's Amended Complaint at p. 4).[7]

The Court concludes that this substantive due process claim is entirely without merit. As was recognized in *Rathle v. Grote,* 584 F.Supp. 1128 (M.D.Ala.1984):

It is now without question that "a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there. It is a vital part of a state's police power. The state's discretion in that field extends naturally to the regulation of all professions concerned with health."

584 F.Supp. at 1132, quoting *Barsky v. Board of Regents of the University of the State of New York,* 347 U.S. 442, 449, 74 S.Ct. 650, 654, 98 L.Ed. 829, 838 (1954). *See also, Simopoulos v. Virginia,* 462 U.S. 506, 103 S.Ct. 2532, 76 L.Ed.2d 755 (1983); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973). It is, however, true that the state's power and discretion in this area are not unbridled and must be exercised within the restraints of the United States Constitution. Although addressing a subsection of Ala.Code § 34–24–360 not at issue here, the analysis and conclusions of the Court in *Rathle, supra,* are equally applicable to the claims now before this Court, in that:

In determining whether a statute is unconstitutionally vague, a court must not consider the statute in isolation and abstraction. Instead, the constitutional standard for vagueness is "the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important." *American Communications Ass'n. v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950).

The health sciences are dynamic and as a result, it is impossible to compile a list of every conceivable form of "acceptable" and "unacceptable" medical practice. Courts have therefore recognized that "statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice." *United States v. Collier,* 478 F.2d 268, 272 (5th Cir.1973). [Other citations omitted]. Instead, the health professions are regulated by statutes of general terminology, complemented by continually evolving and changing non-statutory standards fashioned to meet contemporary norms.

Section 34–24–360 and the record before this Court reflect such a regulatory scheme for the Alabama medical profession. Though section 34–24–360 lists in broad terminology those medical practices which are unacceptable and prohibited by the state, it is supplemented by specific contemporary standards and norms.

584 F.Supp. at 1132. Upon consideration of subsections (8) and (19) in the context of Ala.Code § 34–24–360 and in conjunction

---

7. Plaintiff admitted having prescribed for himself and taken as well Ritalin but contends that, contrary to certain evidence apparently presented to the Commission, his use of this drug ceased about September 1986 and that "[e]ven by state standard I am 'rehabilitated'." (Plaintiff's Amended Complaint at p. 3).

with medical norms and standards,[8] the Court concludes that these subsections sufficiently inform physicians of the standards by which they are to conduct themselves and their practices and, that, inasmuch as they proscribe only unacceptable medical practices, they are not overbroad in their reach. These subsections are, therefore, not unconstitutionally vague or overbroad.[9]

 As to plaintiff's claim that he was denied procedural due process, the Court concludes as well that defendants are entitled to judgment as a matter of law. It is first obvious that, in the exercise of its broad powers to regulate all health professions, the state may temporarily suspend a license to practice medicine without a hearing when it believes that the physician's continuation in practice may constitute an immediate danger to his patients or to the public. The Supreme Court has made clear that:

> Due process ... is a term that "negates any concept of inflexible procedures universally applicable to every imaginable situation" [Citation omitted]. Determining what process is due in a given setting requires the Court to take into account the individual's stake in the decision at issue as well as the state's in a particular procedure for making it.

*Hortonville Joint School District v. Hortonville Education Association,* 426 U.S. 482, 494, 96 S.Ct. 2308, 2315, 49 L.Ed.2d 1, 10 (1976). *See also, Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The state's interest in protecting the public by authorizing the temporary suspension of a license to practice medicine without a hearing while simultaneously instituting measures which insure a proper post-deprivation hearing, Ala.Code § 34–24–361(f), clearly overshadows a physician's interest in continuing his practice until such a hearing on alleged transgressions of medical practice can be conducted.

*See, e.g., Keney v. Derbyshire,* 718 F.2d 352 (10th Cir.1983). It is therefore apparent that, contrary to plaintiff's position, the denial of a pre-deprivation hearing in this instance did not constitute a denial of due process.

The viability of plaintiff's procedural due process claim, therefore, can only rest upon the adequacy of, and the Commission's compliance with, the state's post-deprivation procedures. As stated previously, however, plaintiff does not contend that the Commission failed to comply with the procedures set forth in Ala.Code § 34–24–361, *supra.* Plaintiff avers only that he was entitled to a hearing within 30 days of the suspension of his license and that he was entitled to select a judicial as opposed to an administrative forum to adjudicate the Commission's complaint against him. Plaintiff also contends that his post-deprivation hearing was meaningless because it was conducted by a "Kangaroo Court", a term not specifically defined by the plaintiff. It would appear that plaintiff intended to impune the impartiality of the decisionmakers.

 The Court has carefully examined the provisions of Ala.Code § 34–24–361. These provisions, which were undisputedly followed in this case, are on their face "well within the degree of reasonableness required to constitute due process of law in a field so permeated with public responsibility as that of health." *Barsky, supra,* 347 U.S. at 453, 74 S.Ct. at 657. *See also, Missouri ex rel Hurwitz v. North,* 271 U.S. 40, 46 S.Ct. 384, 70 L.Ed. 818 (1926); *Beauchamp v. De Abadia,* 779 F.2d 773 (1st Cir.1985); *Keney v. Derbyshire,* 718 F.2d 352 (10th Cir.1983). Although plaintiff complains that the Commission delayed scheduling a post-deprivation hearing until more than 30 days following his suspension, such scheduling does not transgress

---

**8.** *See, e.g.,* Alabama State Board of Medical Examiners' "A Physician's Guide to Controlled Substance Regulation." (Plaintiff's Exhibit H to Motion for Emergency Relief.)

**9.** As in *Rathle v. Grote,* 584 F.Supp. 1128 (M.D. Ala.1984), Dr. Waltz marginally implicates the

First Amendment in his substantive due process claims. Subsections (8) and (19), however, proscribe only unacceptable medical practices and, therefore, do not interfere with a physician's freedom in contravention of the First Amendment.

the requirements of due process. The Supreme Court has emphasized that:

> The due process clause does not guarantee to a citizen of a state any particular form or method of state procedure. Its requirements are satisfied if he has reasonable notice and *reasonable opportunity to be heard* and to present his claim or defense, due regard being had to the nature of the proceedings and the character of the rights which may be affected by it.

*Missouri, supra,* 271 U.S. at 42, 46 S.Ct. at 385 (emphasis added). Under the circumstances of this case, particularly the extensive nature of the charges brought by the Commission against the plaintiff in its administrative complaint (Plaintiff's Exhibit D to the Amended Complaint), it cannot be said that the setting of a hearing for November 25, 1987, more than 30 days following the suspension of plaintiff's license on September 24, 1987, denied plaintiff a reasonable opportunity to be heard.

■ Despite plaintiff's mere allegations to the contrary, the due process clause of the Fourteenth Amendment does not vest this plaintiff with a right to select from the outset a judicial forum over an administrative forum which is authorized by the state to establish and enforce standards of conduct relative to the practice of medicine within its borders. It is important at this juncture to note that judicial review of any order of the Alabama Medical Licensure Commission suspending or revoking a license to practice medicine is statutorily provided pursuant to Ala.Code § 34-24-367. *See,* n. 2, *supra. See also, Barsky, supra,* 347 U.S. at 453, 74 S.Ct. at 656 (declared that the New York statute at issue, which similarly provided a mechanism for review by the state courts, comported with the requirements of due process). There simply does not exist any judicial precedent to support plaintiff's proposed interpretation of the due process clause on this point.

■ Plaintiff also contends that he was deprived of a meaningful post-deprivation hearing because the November 25, 1987 hearing was conducted by a "Kangaroo Court". To the extent that plaintiff challenges the impartiality of the Commission on grounds that it impermissibly functions in both an investigatory and an adjudicatory role, no factual foundation has been made to support the challenge. According to the documents filed by the plaintiff during the course of this litigation, it was the Alabama State Board of Medical Examiners which investigated the medical practice of plaintiff and, based on such investigation, filed a complaint and petition with the Alabama Medical Licensure Commission which later adjudicated the issues raised in the complaint. (Plaintiff's Exhibit D to the Amended Complaint). As such, it would appear that the two state agencies acted independently. Even if, however, the Court accepted plaintiff's apparent contention that the two agencies were indistinguishable, plaintiff's challenge on grounds of dual function must fail. No specific foundation has been presented for suspecting that the Commission was prejudiced by any investigation it may have independently conducted or was disabled from hearing and deciding the issues before it on the basis of the evidence presented at the November 25, 1987 hearing. In *Winthrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court held that:

> The mere exposure to evidence presented in non-adversary investigative procedures is insufficient in itself to impugn the fairness of the [Commission] members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v. Morgan,* 313 U.S. 409, 421, 85 L.Ed. 1429, 61 S.Ct. 999 (1941).

421 U.S. at 55, 95 S.Ct. at 1468. The Supreme Court further held that:

> It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and

then to participate in the ensuing hearings. This mode of procedure ... does not violate due process of law.

421 U.S. at 56, 95 S.Ct. at 1469. The procedure addressed in this manner by the *Winthrow* court appears to be identical to that followed by the Commission in the case at bar.

██ Finally, plaintiff contends that he was denied due process of law because the Commission relied on misinformation in connection with its decision to first suspend and to then revoke plaintiff's license to practice medicine. Plaintiff principally attacks the validity of two reports, dated September 11, 1987 and November 4, 1987, which were submitted to the Alabama Board of Medical Examiners by Dr. Charles E. Herlihy, Jr., a psychiatrist who examined the plaintiff at the apparent behest of the Board. (Plaintiff's Exhibit B to the Amended Complaint.) To the extent that plaintiff seeks to have this Court substitute its evaluation of certain evidence for that of the Commission, the Court must decline. The Fifth Circuit Court of Appeals has held, albeit in an analogous situation involving the denial of admission to the Medical Staff of a hospital, that:

No court should substitute its evaluation of [evidence regarding ethical and professional competency] for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in

the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The Court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not attempt to take on the escucheon of Caduceus.

*Woodbury v. McKinnon,* 447 F.2d 839, 843 (5th Cir.1971), quoting *Sosa v. Board of Managers of the Val Verde Memorial Hospital,* 437 F.2d 173, 177 (5th Cir.1971).[10] As applied to this case, no allegation has been made that the violations set forth in Ala.Code § 34-24-360(8) and (19) are not reasonably related to the competency of a physician to practice medicine. Nor can it be said that the facts and opinions set forth in the reports of Dr. Herlihy (Plaintiff's Exhibit B to the Amended Complaint) are irrelevant to the consideration of plaintiff's competency to practice medicine and the charges brought against plaintiff in the administrative complaint prepared by the Alabama Board of Medical Examiners. This is not a case, therefore, that requires further judicial evaluation of the evidence admittedly presented to and relied upon by the Commission, the administrative agency charged with the responsibility of ensuring the competency of medical professionals practicing within its jurisdiction.[11] The

---

10. The Eleventh Circuit, in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

11. The Court cannot help but comment on the fact that, despite plaintiff's vehement attack on the validity of Dr. Herlihy's reports to the Alabama Board of Medical Examiners, plaintiff admits to having treated himself with Synthroid and Ritalin, albeit not in the quantities or for the duration alleged by Dr. Herlihy, and that the

Commission relied upon evidence apart from Dr. Herlihy's reports, including certain drug prescription records. (Amended Complaint at pp. 3 and 4). Plaintiff also admitted in his pleadings that he prescribed certain narcotics for two of his patients, Winston Hill and Tommy Hodge, in greater dosages than advocated by the apparent standards of the Commission. (Amended Complaint at p. 5). These admissions alone would appear to substantiate the Commission's finding that plaintiff had violated Ala.Code § 34-24-360(8) and (19).

Commission is clearly better qualified to consider and judge plaintiff's competency to practice medicine. This Court shall not interfere with the Commission's exercise of its authority, particularly when the procedures it followed did not violate plaintiff's right to due process of law.

For the reasons stated above, the Court concludes that plaintiff's complaint against the Alabama Board of Medical Examiners and the Alabama Medical Licensure Commission is due to be dismissed and that, with respect to the individually named defendants, no genuine issues as to any material fact exists and said defendants are entitled to a judgment as a matter of law. It is, therefore, ORDERED, ADJUDGED and DECREED that:

(1) The motion to dismiss defendants Alabama Board of Medical Examiners and Alabama Medical Licensure Commission be and is hereby GRANTED; and

(2) The motion to dismiss the individually named defendants, treated herein as a motion for summary judgment, be and is hereby GRANTED and that judgment be entered in favor of said defendants, Charles Herlihy, Jr., Leon Hamrick, Patricia Shaner and Larry D. Dixon, and against the plaintiff, Frank Waltz, M.D., the plaintiff to have and recover nothing of these defendants.