**WEDGEWOOD VILLAGE PHARMACY, INC., d/b/a Wedgewood Pharmacy, a New Jersey corporation, Plaintiff,**

v.

**John ASHCROFT, in his official capacity as Attorney General, United States Department of Justice, and Karen Tandy, in her official capacity as the Administrator of the United States Drug Enforcement Administration, Defendants.**

Civil Action No. 03–5242(JBS).

United States District Court,
D. New Jersey.

Dec. 15, 2003.

---

Frank A. Luchak, Esq., Duane Morris, LLP, Cherry Hill, NJ, and Howard M. Hoffmann, Esq. (pro hac vice), Rachael G. Pontikes, Esq. (pro hac vice), Richard P. Darke, Esq. (pro hac vice), Duane Morris, LLP, Chicago, IL, and Alan C. Brown, Esq. (pro hac vice), Duane Morris, LLP, Washington, DC, for Plaintiff.

Christopher J. Christie, Esq., United States Attorney by Paul A. Blaine, Esq., Assistant U.S. Attorney, Camden, NJ, for Defendants.

## OPINION UPON MOTION FOR PRELIMINARY INJUNCTION

SIMANDLE, District Judge.

This matter comes before the Court upon Plaintiff's motion for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, enjoining Defendants from preventing Wedgewood Village Pharmacy, Inc. from receiving, storing, preparing and dispensing controlled substances and listed chemicals at its new pharmacy until final resolution of a pending Order to Show Cause. The principal issue here is whether the Drug Enforcement Administration, in the exercise of its authority and discretion, may refuse to immediately approve a modification in registration and instead reserve decision on a registrant's application for modification and join that determination with matters to be decided in an already pending administrative Order to Show Cause proceeding. For reasons discussed herein, Plaintiff's motion is denied.

## I. BACKGROUND

Wedgewood Village Pharmacy, Inc. ("Wedgewood") is a New Jersey licensed pharmacy. In response to substantial growth in the demand for its services, Wedgewood decided earlier this year that it would relocate its operation to a larger, state-of-the-art pharmacy at 405 Heron Drive, Swedesboro, New Jersey, and signed a ten-year lease on these premises in January 2003. Wedgewood's lease on its former premises in Sewell, New Jersey expired at the end of June 2003, after which time, Wedgewood remained there as tenant on a month to month basis, with the agreement that it would vacate by November 1, 2003. In preparation for the move, on October 21, 2003, Wedgewood called Drug Enforcement Administration ("DEA") Agent Donna Walker to discuss the proper procedure for filing its change of address with the DEA. Agent Walker informed the Wedgewood employee who placed the call, Scott Elwood, that Wedgewood was required to file a change of address form, obtainable from the DEA website.

Wedgewood proceeded on the belief that mere notification to the New Jersey Pharmacy Board and the DEA of a change of address is sufficient to trigger a state inspection of the new pharmacy location which, in turn, triggers reissuance of its state pharmacy license and Wedgewood's DEA registration modified to the new location.

On or about October 21, 2003, Wedgewood notified the DEA by facsimile, First Class Mail, and United Parcel Service that Wedgewood was moving to its new facility on October 31, 2003. On October 30, 2003, Wedgewood received a letter from the DEA dated October 27, 2003 informing it that Wedgewood's address change consti-

tuted a modification of Wedgewood's registration; moving or transporting to, or storing controlled substances at the new location was prohibited; and Wedgewood's request for an address change would be "considered" at a recently issued Order to Show Cause hearing.

### A. Events Giving Rise to the Original Order to Show Cause

DEA Camden conducted an investigation of Wedgewood's activities in March and April 2003. The DEA was developing information that led its agents to believe that Wedgewood was an unregistered manufacturer of drugs rather than the registered pharmacy it claims to be. On April 29, 2003, the DEA Camden Resident Office placed an administrative "code 6" on the registration record of Wedgewood, which acted to prevent any automatic renewal of Wedgewood's registration. By virtue of the DEA regulation at 21 C.F.R. § 1301.36(i), this action did not prevent Wedgewood from continuing to operate under its DEA registration at its former registered premises. In Spring of 2003, Wedgewood timely applied for the renewal of its registration, however, because the registration was due to expire. The DEA did not renew Wedgewood's registration. Without a valid registration, Wedgewood would not be able to continue its business. Therefore, Wedgewood and the DEA entered into an agreement, pending the resolution of Wedgewood's license renewal, that allowed Wedgewood to continue to dispense controlled drugs.

On May 3, 2003, DEA Camden forwarded to DEA Headquarters a recommendation for the issuance of an Order to Show Cause proposing to revoke Wedgewood's registration. As Wedgewood, in DEA's view, was operating outside its retail pharmacy registration by conducting manufacturing activities without an appropriate DEA registration, the DEA Newark Acting Special Agent–in–Charge sent a letter to Wedgewood dated August 21, 2003, advising it to immediately cease and desist the identified unlawful activities.

Subsequently, on September 8, 2003, the DEA Deputy Assistant Administrator for the Office of Diversion Control issued an administrative Order to Show Cause to Wedgewood, proposing to revoke Wedgewood's DEA registration and to deny any pending applications for renewal of its registration pursuant to 21 U.S.C. §§ 824 and 823. The Show Cause Order contains twenty-three allegations of violations of certain Food Drug and Cosmetic Act provisions as well as some DEA record-keeping violations for controlled substances. Wedgewood filed its request for a hearing on the Order to Show Cause on October 16, 2003. An Administrative Law Judge was assigned and a briefing and disclosure schedule was set, which extends to December 8, 2003. A hearing before the ALJ is anticipated in early 2004.

### B. Alleged Emergent Nature of this Action

By its own arrangements with its landlord at its principal place of business in Sewell, Wedgewood had to vacate its leased principal place of business on October 31, 2003, as it was scheduled for major renovation for another tenant the week of Monday, November 3, 2003. Wedgewood had signed a lease for new enlarged premises of 30,468 sq. ft. in Swedesboro in January 2003, and it commenced paying rent at Swedesboro as the intended premises underwent substantial renovations and construction to accommodate Wedgewood's activities, and by the end of October, the Swedesboro building was ready.

Wedgewood's dispensing of compounds that contain controlled substances is alleged to be the most profitable segment of

its business. It is a substantial operation with many mail-order or internet customers. Its controlled drug inventory on hand is worth approximately $100,000. On October 30, 2003, DEA's counsel informed Wedgewood's counsel that if the controlled drugs are moved into the new unapproved location, the DEA will seize them.

The administrative Show Cause hearing was originally unrelated to the move or safety or security of the new pharmacy location, since DEA was unaware of Wedgewood's plans to move until October 21, 2003. Wedgewood asserts that the administrative hearing and its resolution, including any appeal, may be a year or more away. In the interim, Wedgewood contends that it will be driven out of business and have its long-standing relationships with patients and physicians eroded.

Wedgewood filed its Complaint herein on November 5, 2003, and Wedgewood moved for a TRO and this Court heard lengthy arguments on November 7, 2003, at which time it ruled from the bench, denying Wedgewood's motion. *See* Tr. 11/7/03 at 77:17 to 90:17. Subsequently, the Court scheduled Plaintiff's motion for a preliminary injunction in order to give more detailed consideration to the parties' positions. Oral argument was heard on November 25 and 26, 2003 and testimony was taken from Elizabeth Willis, Diversion Investigator and the Chief, Drug Operations Section, Office of Diversion Control, Drug Enforcement Administration; Charles Lunden, a forensic Certified Public Accountant; George Malmberg, registered pharmacist and co-owner of Wedgewood; Scott Elwood, a

Wedgewood employee; and Ludmilla Malmberg, registered pharmacist and co-owner of Wedgewood.[1]

This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

## II. *DISCUSSION*

### A. *Statutory and Regulatory Scheme*

Under the Controlled Substances Act ("CSA"), any person who distributes or dispenses controlled substances must obtain a registration from the DEA. 21 U.S.C. § 822(a). Wedgewood is currently registered with the DEA as a retail pharmacy under the CSA, in accordance with 21 U.S.C. §§ 822 and 823. As a registrant, Wedgewood is obligated to conduct its regulated business in keeping with "the extent authorized by its registration, and in conformity with the other provisions of subchapter [I of Chapter 13]." 21 U.S.C. § 822(b).

The CSA and the regulations promulgated under it are intended in part to serve as an oversight and enforcement vehicle for preventing and reducing the diversion of prescription pharmaceutical controlled substances from their intended recipients to those who will use the drugs for abusive, illicit or unauthorized purposes. In order to deter drug diversion, the Act requires registrants to prepare and maintain records which account for the receipt, storage, and distribution of controlled substances. These recordkeeping and registration requirements are part of the CSA's "closed system" which allows both the

---

**1.** Affidavits or certifications were also submitted, subscribed by George J. Malmberg, Scott Elwood, Howard M. Hoffmann, Esq., Frank A. Luchak, Esq., Elizabeth A. Willis, Donna M. Walker, and Wayne M. Patrick, Esq. (certifying the Administrative Record, hereafter Govt. Ex. 9), together with relevant attachments. Various exhibits were received into evidence at the hearing. The Court also heard the parties' stipulations, including a stipulation as to what the testimony of Matthew Weinberg would be on behalf of plaintiff pertaining to the suitability of plaintiff's proposed new location, inter alia.

DEA and the registrant to monitor the activities of registrants and their use of controlled substances, and to aid in detecting and impeding efforts to divert and misuse controlled substances. 21 U.S.C. § 801; 21 C.F.R. Part 1301, 1304.

Under the CSA, the place of conducting the registrant's business is important, as the CSA further provides that "[a] separate registration shall be required at each principal place of business or professional practice where the applicant manufactures, distributes, or dispenses controlled substances or list I chemicals." 21 U.S.C. § 822(e). The companion regulation, 21 C.F.R. § 1301.12(a), also provides that "[a] separate registration is required for each principal place of business or professional practice at one general location where controlled substances are manufactured, distributed, imported, exported, or dispensed by a person." *Id.*

Pursuant to 21 C.F.R. § 1301.51, a simple method is provided for notifying DEA of a prospective change of address. Any registrant may apply to modify his registration in order to, among other things, change his address, by submitting a letter of request to the DEA. The regulation further provides that "[t]he request for modification shall be handled in the same manner as an application for registration." *Id.*

When an application for modification of an existing practitioner's registration is received by DEA, and before an approval may be given, DEA must determine whether there is any need to conduct a further investigative inquiry, or to handle the matter as part of a public interest proceeding to revoke or deny a registration pursuant to 21 U.S.C. §§ 823 and 824. Furthermore, there is no requirement that a request for modification be granted. Nor is there any requirement either by statute or regulation, establishing that any

other agency is to conduct such an evaluation for or on DEA's behalf, or that DEA acquiesce in some other agency's similar regulatory or investigative activity. Thus, the DEA, when receiving an address change request from a registrant, is authorized to treat that request as an application for registration.

Pursuant to 21 U.S.C. § 824(a)(4), a registration may be revoked if the registrant is found to have committed such acts as would render registration under § 823 inconsistent with the public interest. The DEA has invoked this procedure against Wedgewood in its September 8, 2003 Show Cause Order, above. Similarly, pursuant to § 823, an application for registration, or a modification request, may be denied on public interest grounds, including "past experience in the distribution of controlled substances," 21 U.S.C. § 823(b)(4) and (e)(4). In addition, in determining the public interest, the DEA is required to consider, among other topics, "such other facts as may be relevant to and consistent with the public health and safety." 21 U.S.C. § 823(b)(5). The DEA has invoked these and other provisions of law in proposing that Wedgewood's application to modify its registration by moving its business be denied, as discussed further below.

In the event that an existing registration is proposed for revocation, or that a registration or renewal application or modification is proposed for denial, DEA is required to serve an Order to Show Cause on the registrant and give the registrant or applicant an opportunity for a hearing before an Administrative Law Judge ("ALJ") in order to contest the proposed action. 21 U.S.C. § 824(c). Under 21 C.F.R. § 1301.36(i), as long as a current DEA registrant submits his renewal application in a timely manner, an Order to Show Cause in administrative revocation proceedings will not void the registration.

The registration remains in effect until the DEA Deputy Administrator issues her final order, as provided in 21 U.S.C. § 824(c). Indeed, Wedgewood was permitted to continue to operate even though its registration expired on May 30, 2003 and the DEA issued the Order to Show Cause on September 8, 2003, pending DEA's final order.

The ALJ may and does require the parties to submit pre-hearing statements in which the parties list a summary of the expected witnesses' testimony and the documents to be produced at the hearing. 21 C.F.R. § 1316.58(a). In the pending administrative proceeding, the ALJ issued an Order for Prehearing Statements setting a date for each party to file their respective summaries. In response, the DEA has already filed its pre-hearing statement. (See Walker Aff. at Ex. 2). The deadline for submission of Wedgewood's pre-hearing statement was December 8, 2003. As a matter of procedure, the hearing date will be set at a conference to be held shortly after both parties have filed their pre-hearing statements. *See,* 21 C.F.R. § 1316.54.

When DEA seeks to revoke a DEA practitioner's registration, the burden of proof is on the agency. 21 C.F.R. § 1316.56. Similarly, pursuant to the denial of an application for registration under 21 U.S.C. § 823, and accordingly pursuant to the denial of an application for address change which is treated as an application for registration, the statute requires the DEA to serve upon the registrant a show cause order, to show cause why the registration should not be denied. 21 U.S.C. § 824(c).

**2.** This is not a case governed by 21 U.S.C. § 877. There has been no due process hearing before the agency resulting in factual determinations that can thereafter be reviewed by a reviewing court. Instead, Wedgewood's

### B. *Subject Matter Jurisdiction*

■ It is a general principle that the federal question jurisdiction statute confers jurisdiction on federal courts to review final agency action. Furthermore, Plaintiff alleges a deprivation of a constitutional right, here due process. As such, this Court has jurisdiction under 28 U.S.C. § 1331 to hear this case.

■ In addition, district courts retain general jurisdiction to review alleged mistreatment by administrative agencies. Specifically, 5 U.S.C. § 706(1) (the Administrative Procedure Act) provides this Court with the statutory authority to review a claim that the agency has unreasonably delayed or unlawfully withheld agency action. Wedgewood claims that the DEA, in denying its request to change location pending determination of this application in the context of the ongoing revocation hearing before the ALJ, has unreasonably delayed action upon what Wedgewood characterizes as a routine request for change of address.[2]

For these reasons, this Court determines that it has jurisdiction and this case is therefore properly before it.

### C. *Standard for Preliminary Injunctive Relief*

In ruling on a motion for a preliminary injunction, the Court must consider the following four facts: (1) the likelihood that the moving party will prevail on the merits; (2) the extent to which, if any, the moving party will be irreparably harmed; (3) the extent to which the non-moving party will suffer irreparable harm if the

request to change its address is but the first stage of the established process for modification of registration, which is handled as an application for registration.

injunction is granted; and (4) the public's interest. *AT & T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir.1994). Issuing a preliminary injunction is "an 'extraordinary remedy' and should be restricted to 'limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989). The moving party bears the burden of proving that all elements required for an injunction are met. *See, Adams v. Freedom Forge Corp.,* 204 F.3d 475, 486 (3d Cir.2000).

In addition, a district court must be convinced that its consideration of the four relevant factors favors the granting of preliminary relief, *Shire US, Inc. v. Barr Labs., Inc.,* 329 F.3d 348, 352 (3d Cir.2003), and a preliminary injunction should issue only if the party seeking it produces evidence sufficient to convince the court that all four factors favor preliminary relief. *AT & T v. Winback and Conserve Program, Inc.,* 42 F.3d at 1427.

### 1. *Likelihood of Success on the Merits*

■ Wedgewood alleges a violation of its due process rights under the Fifth Amendment to the United States Constitution by the DEA in summarily revoking its license to dispense to patients and receive from vendors any controlled drugs. A license, Wedgewood contends, is a property interest that cannot be revoked, suspended, or withdrawn without granting the licensee the procedural due process required by the Constitution. *See Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Depriving Wedgewood of its rights to dispense and receive controlled drugs without notice and a hearing would violate Wedgewood's due process.

First, Wedgewood claims that it had no notice that it would lose its ability to dispense if it moved; it says it did not know, and could not have known, that its change of address would deprive it of its right to engage in its business. Wedgewood's contention, however, flies in the face not only of a plain reading of the applicable statutes and regulations, but also of common sense.

Upon application, the DEA Administrator is required to register an applicant, unless it determines that the applicant's registration would be inconsistent with the public interest. This basic command is repeated throughout the registration standards established in 21 U.S.C. §§ 823(a), (b), (d) & (f). The authority to grant or deny, furthermore, encompasses both new and renewal applications. Under 21 U.S.C. § 824(c), the Administrator must issue an order to show cause for any proposal to revoke or deny a registration or application pursuant to either 21 U.S.C. §§ 824 or 823, as was done on September 8, 2003, following the DEA's explicit warning to Wedgewood on August 21, 2003. (Govt.Ex.9(C)).

With respect to requests for modifications of an existing registration, including change of address, DEA regulations explicitly provide that "[t]he request for modification shall be handled in the same manner as an application for registration. If the modification is approved, the Administrator shall issue a new certificate of registration." 21 C.F.R. § 1301.51. There is no provision at any other place in either the CSA itself, or in DEA's regulations, that indicates or even suggests that the approval of a modification to a registration by the DEA is anything other than permissive. In fact, consistent with the regulatory requirement that a request for modification be treated and processed in the same manner as an application for registration, the DEA may legitimately choose to deny the requested modification outright if it concludes that the modification is

inconsistent with the public interest, or make it part of an already pending show cause proceeding which seeks to undermine the existing registration on public interest grounds.

DEA, in the course of its investigation of Wedgewood in March and April 2003, drew toward the conclusion that Wedgewood was involved in activities exceeding the limitations of its retail pharmacy registration. By late April, DEA placed a "code 6" on Wedgewood's file, so that any request for renewal or modification of Wedgewood's registration would be deferred pending investigation. Wedgewood's registration expired on May 30, 2003, according to Mr. Malmberg, and when it was not automatically renewed, he inquired of DEA and was told that the license was under administrative review, according to his testimony. DEA undertook steps to begin the process of issuing an administrative show cause order to revoke Wedgewood's DEA registration under the public interest provisions of 21 U.S.C. § 824(a)(4). Wedgewood had knowledge of the order to show cause proceedings since September 2003. In fact, the Order to Show Cause explicitly states, "Notice is hereby given to afford you an opportunity to Show Cause before the Drug Enforcement Administration (DEA), at a place and time to be determined, as to why the DEA should not revoke Wedgewood Village Pharmacy's (Wedgewood) DEA Certificate of Registration, AW1289126, as a retail pharmacy, and deny any pending applications for renewal of such registration for reason that your continued registration is inconsistent with the public interest...." (September 8, 2003 Order to Show Cause, Govt. Exhibit 9(B)). This language, when read together with the language of 21 C.F.R. § 1301.51, was more than sufficient to reasonably put Wedgewood on notice that its application for modification of registration was unlike-ly to be automatically approved when submitted in late October 2003.

Common sense should also have alerted Wedgewood to potential problems with its move and request for modification in registration. The DEA was clearly concerned with the volume of controlled substances in Wedgewood's possession and quantity of final drugs produced. *See* September 8, 2003 Order to Show Cause—Govt. Exhibit 9(B); August 21, 2003 DEA Letter to Wedgewood—Govt. Exhibit 9(C). It is, in fact, the DEA's position that Wedgewood was operating outside the scope of its registration as a pharmacy and was instead configured as a drug manufacturing and distribution facility. Wedgewood has claimed that as a result of its national reputation, the demand for its services has increased and thus prompted the relocation of its operation to a larger, state-of-the-art pharmacy of some 30,000 sq. ft. Knowing the DEA's concern with volume, Wedgewood should have anticipated future concern by the DEA with a move to a larger facility.

For these reasons, this Court concludes that Wedgewood had or reasonably should have had notice that the request for relocation would be treated as a new application for registration and that its approval was far from certain, since DEA is seeking to revoke Wedgewood's registration altogether.

Having determined that Wedgewood had reasonable notice, this Court turns next to whether the DEA acted in an arbitrary and capricious manner in provisionally denying Wedgewood's request for modification in registration. 5 U.S.C. § 706 provides the scope of review for decisions of administrative agencies and requires the reviewing court to decide all relevant questions of law, interpret constitutional and statutory provisions, and de-

termine the meaning or applicability of the terms of an agency action. In particular, "[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency determination is arbitrary and capricious, "if the agency has . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers Assoc. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

Here, Wedgewood argues that because the DEA had allowed Wedgewood to dispense controlled substances from its prior location pending the resolution of Wedgewood's registration revocation hearings, but then prohibited Wedgewood from dispensing such substances from its new location, the DEA's action is arbitrary and capricious.

Under 5 U.S.C. § 558(c), "[w]hen the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency." In this case, Wedgewood's old registration expired on May 30, 2003. By agreement, the DEA followed the mandates of § 558 and permitted Wedgewood to continue to operate. However, that continuation of operation was intended to occur at the former facility in Sewell, New Jersey.

Nothing in § 558 requires the DEA to accede to a modification of the location of the place of doing business, or to any other modification of registration, until

DEA has had an opportunity to consider that request and to either grant it or to deny it, as a modification of registration, which is also a matter within the DEA's discretion. Wedgewood, in moving and thereby disrupting the continuing nature of its business activity, has opened the door for the DEA to act in its authority and discretion. In seeking to compel a modification to a registration which has expired and is under threat of termination through the administrative process initiated by the previously filed Order to Show Cause, Wedgewood has itself brought about this unfortunate chain of events.

As evidence of the arbitrary and capricious nature of the DEA's actions, Wedgewood points to the refusal of the Agency to inspect the new facility. Simply because an agency refuses to follow procedures desired by a regulated party, however, does not render it arbitrary or capricious. Here, quite to the contrary, the DEA has a uniform and predictable practice in this area. At the retail level of the controlled drug distribution system, a license by the State is a prerequisite to the issuance of a DEA registration. "It is not common practice for DEA to conduct a 'pre-registration' investigation of a premise in the case of a new application, renewal application or modification request by a practitioner, including a retail pharmacy." *See* Elizabeth A. Willis Affidavit, ¶ 11. In this case, DEA has consistently asserted that Wedgewood requires a DEA registration as a manufacturer to continue to conduct its operations. Since there is no pending Wedgewood application for registration as a manufacturer, there is, in DEA's view, no reason to inspect the new facility. The DEA would inspect, under manufacturer inspection criteria, after such registration is sought. That Wedgewood disputes the DEA's characterization of its activities as manufacturing simply results in Wedge-

wood's failure to submit an application for a new registration as a manufacturer—and thus, a refusal by DEA to inspect. The overlap in the criteria to be employed by the DEA regarding considerations of the public interest for revocation and new registration also places both matters legitimately before the ALJ. *See* 21 U.S.C. §§ 824(a)(4) & 823(b)(4), *supra, inter alia.*

Wedgewood contends that the DEA is wrong to defer final decision on the request for modification to its registration and consider whether the modification will be approved as part of the Order to Show Cause hearing. Indeed, the DEA's Elizabeth Willis acknowledged that such requests are typically granted for pharmacy registrants which are not under investigation or threat of revocation. This decision, however, is fully within the authority of the DEA. DEA has no duty or obligation to act immediately on a request for modification in registration, especially when procedures to revoke that very same registration are well underway. Since a request for modification is, under the appropriate regulations, treated and processed in the same manner as an application for registration, the DEA may legitimately choose to deny the requested modification outright if it concludes that it is inconsistent with the public interest, or alternatively make it part of an already pending show cause proceeding which seeks to revoke the existing registration on public interest grounds.

If DEA denies the requested modification at the outset, as in this case, the registrant must receive notice of the opportunity to challenge the denial through an administrative show cause proceeding pursuant to 21 U.S.C. § 824(c), with the burden remaining upon the DEA. Whether denied outright or made part of an already pending show cause order, such a proceeding is unavoidable if the registrant wishes to contest: (1) denial of the modification, or (2) the possibility of denial of the modification along with revocation of the registration itself.

Here, an Order to Show Cause was issued by DEA to Wedgewood stating the detailed factual bases upon which DEA proposed to revoke Wedgewood's registration and deny its pending application for renewal, on grounds that continuation of the registration would be inconsistent with the public interest. (September 8, 2003 Order to Show Cause—Govt. Exhibit 5). Since Wedgewood's request for modification was received well after the issuance of the Order to Show Cause on September 8, 2003, and since that Order is now docketed and has been briefed by both sides before the ALJ, the DEA has incorporated the issue of the proposed denial of the modification within its pre-hearing filing. (Government's Prehearing Statement at 2— Govt. Exhibit 2). DEA is under no obligation to institute separate show cause proceedings running in tandem, likely to be consolidated anyway by the ALJ. Nor is DEA required to take immediate action upon a voluntary application to modify the registration that it is seeking to revoke through the ongoing show cause proceedings.

Wedgewood asserts, however, that even if the DEA has discretion to place an application for change of registration address into the administrative process, its decision to do so here amounts to a revocation of Wedgewood's ability to conduct its business in compounding and dispensing controlled substances that is arbitrary and capricious. The Court disagrees.

The DEA, following an investigation documented by numerous entries in the administrative record (see Declaration of Wayne M. Patrick Certifying the Administrative Record, Govt. Ex. 9 and attachments thereto), advised Wedgewood to

cease and desist activities as an unregistered manufacturer, and then issued a detailed order to show cause proposing to revoke Wedgewood's DEA Certificate of Registration on public interest grounds under 21 U.S.C. §§ 824(a)(4) and 823(f). (See Patrick Certification, Govt. Ex. 9 at ¶ 2). That Order to Show Cause (Govt.Ex.9(B)) is rich in details of the allegations DEA makes as a result of investigations by its agents and others. Those allegations of Wedgewood's misconduct and DEA's concerns are further amplified in the DEA's Prehearing Statement before the Administrative Law Judge (Govt. Ex. 2, dated November 14, 2003), and by the administrative record revealing the government's underlying factual bases, including the materials in Govt. Ex. 9(A), *supra.* Although untested before the ALJ, the DEA's allegations are the product of what appears to be the investigation and reports of Wedgewood's activities in excess of its pharmacy registration and extending into the realm of an unregistered manufacturer. While this Court does not speculate about the outcome of the future ALJ hearing, neither will this Court ignore the serious allegations and the investigative bases for DEA's proposed revocation. Wedgewood has argued in its post-hearing Memorandum (December 2, 2003) at 2–4 that this Court cannot give deference to any of the DEA's allegations set forth in the Order to Show Cause. Wedgewood points out that even when a court reviews an agency's findings of fact *after* an administrative hearing, the court must still "engage in a substantial inquiry," citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416–18, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Wedgewood further points out that these unsubstantiated allegations cannot provide a rational basis for agency action, citing *Hondros v. United States Civil Serv.,* 720 F.2d 278 (3d Cir.1983) (finding an unsubstantiated FBI report could not be the rational basis for agency refusal to certify an employee for a permanent Civil Service position). *Hondros,* however, involved judicial review of final agency action refusing to place plaintiff in a permanent position, after years of proceedings, where the Civil Service Commission relied upon an unsubstantiated report that (a) the employing agency itself had not relied upon and (b) itself actually contained nothing that reflected adversely upon the plaintiff's ability to serve permanently in his position. 720 F.2d at 284, 286, 296. In the present case, in contrast, there is nothing arbitrary or capricious about the DEA's own reliance upon the investigation by its own compliance agents and those of other agencies regarding the particular aspects of Wedgewood's operations. The DEA must assess those allegations, and Wedgewood's proffered evidence, before ultimately determining whether the public interest requires the action it proposes to take under 21 U.S.C. § 924(c) and 21 C.F.R. § 1301.31, *inter alia.*

The Court, upon the present record, finds that it is neither arbitrary not capricious for the DEA to provisionally deny the application for relocation of Wedgewood's principal place of business, pending the ongoing revocation process. Moreover, the DEA's provisional denial, and placement of Wedgewood's application into the ongoing show cause process, is consistent with the reasonable administration of DEA's regulations, since DEA's interpretation of its regulations, including 21 C.F.R. § 1301.51, *supra,* is entitled to substantial deference and is indeed controlling in the absence of authority to the contrary. *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), citing *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). Elizabeth Willis,

Chief of the Drug Operations Section, Office of Diversion Control, who has served in the DEA Diversion Control Program for 26 years, testified both by affidavit and in person at the hearing herein. Among other things, Ms. Willis testified regarding the administrative "code 6" procedure for no automatic renewal which was placed against Wedgewood on April 29, 2003 after investigation, consistent with the Diversion Investigators Manual, Section 5111.2. (Willis Aff. ¶¶ 6 & 7). Willis indicated, "It has been a long standing DEA practice, in handling applications and requests for modification in those cases when a registrant is subject to an administrative show cause to revoke its registration, to defer action on those submissions and incorporate them in the current or pending administrative proceeding." (Willis Aff. ¶ 10). At the hearing, Willis was examined on her statement about this practice, and reiterated the practice of combining a request for modification with an ongoing show cause process. She was unable to recall a case exactly like Wedgewood's, in which the application for modification involved a request to move the principal place of business while facing a revocation hearing. Wedgewood argues that this is proof that the DEA has no such policy. That she could not recall another pharmacy which sought to change address while its revocation hearing was pending is of no moment. The request to change address is just one of many types of requests for modification under the Act and its regulations, and the Court credits Ms. Willis' testimony and her considerable years of experience in this regard. It may likely be the case, as the Government posits in its post-hearing Letter Memorandum of December 4, 2003, that most pharmacies stay put when undergoing registration revoca-

tion proceedings, so the precise matter has just not come up before. This administrative practice thus finds support upon the factual records and, more importantly, under the ample latitude under the criteria DEA must apply in determining whether the public interest is served by permitting the modification, including Wedgewood's compliance with applicable federal laws relating to controlled substances, as required by 21 U.S.C. § 823(f)(4).

Thus, despite Wedgewood's allegations that it has been denied due process of law and that the DEA has acted arbitrarily and capriciously, this Court reaches the conclusion that no such violation has occurred and therefore, Wedgewood is unlikely to succeed on the merits of its case.[3]

### 2. Irreparable Harm to Plaintiff

■ Wedgewood asserts that if the DEA continues to prohibit it from dispensing controlled substances at its new location, it will be out of business by approximately January 2, 2004, leaving approximately 70 employees unemployed. First, Wedgewood claims that it has built its business around the concept of one stop shopping. That is, it offers controlled substances and listed chemicals, as well as non-controlled drugs so that physicians and patients can conveniently use Wedgewood to service all of their prescription needs. The argument, according to Wedgewood, is that once Wedgewood's patients and physicians learn that Wedgewood can no longer provide them with prescription services for controlled substances, they will eventually turn to other compounding pharmacies that can meet all of their needs, even for the non-controlled substances. This argument, however, de-

---

**3.** Although Defendant's summary judgment cross-motion was filed a few days before the hearing, the Court is not yet reaching it. Plaintiff's opposition has not yet been received.

pends on the assumptions that Wedgewood's customers will not continue to have their non-controlled substance prescriptions filled with Wedgewood and that Wedgewood cannot broaden its customer base by targeting the non-controlled substance prescription market while the administrative revocation process unfolds as to its pharmacy registration. Wedgewood offered the testimony of its owners, George and Ludmilla Malmberg, as well as its expert witness, Charles Lunden, a forensic CPA, addressing the issue of immediate and irreparable harm. Mr. Lunden performed a small random sample of the customers of Wedgewood, which he opined was sufficient to enable him to predict, at a level of confidence of 90%, the portion of customers that will be lost if Wedgewood cannot fill their prescriptions for controlled substance compounds. Using that opinion, Mr. Lunden then predicted the amount of sales decline that will occur unless Wedgewood obtains preliminary injunctive relief, and he projects that large losses will overtake the company, requiring it to close its doors.[4] There are significant methodological flaws undermining Mr. Lunden's dire conclusions, as explained in the Sealed Appendix.[5]

The testimony of Mr. and Mrs. Malmberg also painted a bleak picture pertaining to the potential for losing employees and customers. Plaintiff has not demonstrated that grievous losses are likely.

Second, Wedgewood argues that its inability to dispense the controlled substances has and will continue to damage its reputation. If the DEA's prohibition is not lifted, Wedgewood will be forced to explain to customers why it cannot dispense controlled substances. As unpleasant and unattractive as that may be, Wedgewood's inability to fill controlled substance prescriptions is largely a product of its own doing and the harm, as grave as it may be, does not counsel in favor of granting the injunction.

Finally, Wedgewood claims harm in the loss of employees that will result when it is forced to cut personnel as a way of reducing costs and attempting to stay in business. There is, however, no real way of knowing how many employees will be lost, how many might return should the situation improve for Wedgewood, or any of the other variables at play in individual employment decisions.[6]

### 3. *Harm to Defendants if Preliminary Injunction is Granted*

This Court must also consider the potential harm to the DEA in the event the injunction is granted against it. On the one hand, the DEA permitted Wedgewood's operations to continue after expiration of Wedgewood's registration on May 30, 2003, despite DEA's misgivings, and even after the show cause order was entered in September. Thus, for Wedgewood to be permitted by Court Order to move its controlled substances dispensing operations to a new location would permit continuations despite DEA's serious concerns, as before the move. On the other hand, Wedgewood's location matters and DEA's concerns will multiply if Wedgewood moves into an expanded, modernized

---

4. At Wedgewood's request, the Court has sealed testimony regarding the details of Wedgewood's sales, profits, growth rate, customer mix and product mix, because this is confidential information in this closely held subchapter S corporation. These details are presented and discussed in the Sealed Appendix to this Opinion, containing findings which are incorporated herein by reference.

5. *Id.*

6. These findings are amplified in the Sealed Appendix to this Opinion.

facility while the show cause process unfolds. This factor seems neutral—DEA's serious enforcement concerns could be undermined by forcing DEA to permit the move, but only in a somewhat greater degree than what DEA was permitting from September 8, 2003 onward in the absence of a move. Moreover, DEA's concerns with the distribution of controlled substances is not trivial in this case, given the nature of DEA's investigation and the atypical size of plaintiff's activities.

### 4. *The Public Interest*

Finally, the DEA has an interest in protecting the public and in exercising its authority over a highly regulated industry. Indeed, as will be discussed below, the DEA is expressly charged by Congress to act in the interest of the public.

In arguing that the public interest requires that this Court keep Wedgewood in operation, Wedgewood argues only that Wedgewood's customers will suffer because they will not be able to tap Wedgewood's expertise. While it might be true that the type of compounding that Wedgewood performs for its physicians and its patients is not something that can be done by any corner pharmacy, other compounding pharmacies exist that engage in the exact same activity as Wedgewood, namely, Wedgwood's competitors, the very ones to which Wedgewood expresses a fear of losing its customer base. Thus, the loss of Wedgewood's skill, as expert as it may be, will not severely harm the community it serves.

On the other hand, the DEA offers an extremely strong argument of how the public interest is served by allowing the agency to regulate this industry and ensure the public health, welfare, and safety. The DEA is expressly charged by Congress to act in this field and having done so, the interests of private litigants must give way to the reasonable attainment of public purposes. *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 179–80, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). As the DEA has determined that there is sufficient reason for serious regulatory alarm about the current activities of Wedgewood, that determination must be given the weight it deserves, especially when Wedgewood itself alleges no comparable public interest in allowing Wedgewood to remain in operation.

### *CONCLUSION*

For the reasons discussed above, Plaintiff's motion for preliminary injunction will be denied. The accompanying Order is entered.

### ORDER

This matter having come before the Court upon Plaintiff's motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65 directing defendants John Ashcroft, in his official capacity as Attorney General, United States Department of Justice, and Karen Tandy, in her official capacity as the Administrator of the United States Drug Enforcement Administration to permit it to receive and dispense controlled substances at its new pharmacy location; and the Court having considered the parties' pre- and post-hearing submissions; and this Court having heard oral argument on November 25 and 26, 2003; and for the reasons stated in the Opinion of today's date (including the Sealed Appendix to the Opinion filed this date); and for good cause shown;

IT IS this 15th day of December, 2003 hereby

**ORDERED** that Plaintiff's motion for a preliminary injunction [Docket Item No. 2–1] shall be, and hereby is, *DENIED*.