**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 9, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-60458
Summary Calendar

_____

DANIEL A. MAYNARD, D.O.,

Petitioner,

versus

DRUG ENFORCEMENT ADMINISTRATION,

Respondent.

_____

On Petition for Review of an Order of the
Drug Enforcement Administration
Entered on March 29, 2004

_____

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Daniel Maynard petitions this Court for review of the Drug Enforcement Agency's

("DEA") decision to revoke his DEA registration. For the reasons that follow, we deny

Maynard's petition and affirm the DEA's decision.

I. FACTS AND PROCEEDINGS

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Petitioner Daniel Maynard, a doctor of osteopathic medicine, held a DEA practitioner's registration, issued pursuant to 21 U.S.C. § 823(f), which permitted him to dispense controlled substances. On June 20, 2003, the Disciplinary Panel of the Texas State Board of Medical Examiners ("Disciplinary Panel") temporarily suspended Maynard's medical license. The Texas Department of Public Safety ("DPS") revoked Maynard's controlled substance registration on that same day.

On June 23, 2003, the DEA issued an order to show cause, affording Maynard the opportunity to demonstrate why the DEA should not revoke his DEA certificate of registration. The order was sent by certified mail, return receipt requested, to Maynard's address of record, and was signed for by Aino Maynard.

Maynard did not request a hearing on the order, and the DEA's Acting Deputy Administrator, in a final agency decision, found that Maynard had waived his right to a hearing. The DEA learned that the Disciplinary Panel had temporarily suspended Maynard's medical license and that the DPS had revoked Maynard's state controlled substance license.

The DEA, finding that it lacked authority to register an individual who did not possess valid state authority to handle controlled substances, issued a final decision on March 29, 2004, revoking Maynard's DEA certificate of registration to handle controlled substances. This appeal was timely filed on May 22, 2004.

## II. STANDARD OF REVIEW

Maynard petitions for review of the DEA's order pursuant to Rule 15 of the Federal

Rules of Appellate Procedure. FED. R. APP. P. 15. This Court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Section 706 directs us to:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B)    contrary to constitutional right, power, privilege, or immunity;
> (C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D)    without observance of procedure required by law;
> (E)    unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F)    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Id. "Where an agency is entrusted with the authority to enforce a statute, its construction of the controlling statute must be upheld if it is sufficiently reasonable; the reviewing court must not substitute its judgment for that of the agency." Trawick v. DEA, 861 F.2d 72, 75 (4th Cir. 1988).

## III. DISCUSSION

A.    The DEA properly revoked Maynard's federal controlled substance license based on a temporary suspension.

The Controlled Substances Act ("CSA"), Pub. L. No. 91-513, 84 Stat. 1236 (codified as amended at 21 U.S.C. § 801, et seq.), establishes a regulatory system to control the manufacture, distribution, and dispensation of controlled substances. Noramco of Del.,

Inc. v. DEA, 375 F.3d 1148, 1150 (D.C. Cir. 2004). The Act authorizes the Attorney General, whose authority is delegated to the DEA, 28 C.F.R. § 0.100(b), to license manufacturers, distributors, and dispensers to handle controlled substances under the criteria set forth in 21 U.S.C. § 823. See Trawick, 861 F.2d at 74 (explaining that the "CSA requires that every practitioner who dispenses or distributes any controlled substances in connection with his practice obtain a certificate of registration from the Attorney General").

The DEA is authorized to register practitioners to dispense controlled substances "if the applicant is authorized to dispense . . . controlled substances under the laws of the State in which he practices." 21 U.S.C. § 823(f). The DEA may revoke a practitioner's license upon finding two elements: that the practitioner "has had his State license or registration suspended, revoked, or denied by competent State authority and is no longer authorized by State law to engage in the . . . dispensing of controlled substances . . . ." Id. at § 824(a)(3). Before revoking a registration, the DEA must issue an order to show cause, providing the practitioner with the opportunity to demonstrate why the registration should not be revoked. Id. at § 824(c). The order must state the basis of the revocation, and revocation procedures are held in conformance with the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. Id.

Maynard argues that the DEA exceeded its authority under the CSA because his "license was merely temporarily suspended, without notice, by a body unauthorized to make final suspensions of medical licenses." This argument is without merit. The Disciplinary Panel was authorized to temporarily suspend Maynard's license under the

4

Texas Medical Practice Act ("MPA"), TEX. OCC. CODE § 151.001, et seq. The Texas State Board of Medical Examiners is the designated agency in Texas with the authority to regulate the practice of medicine. Id. at § 152.001. A person may not practice medicine in Texas without a license issued under the MPA. Id. at § 155.001.

The MPA authorizes the president of the Board to appoint a three-member Disciplinary Panel to determine whether a person's license to practice medicine should be "temporarily suspended" in cases where the person's continued practice would "constitute a continuing threat to the public welfare." Id. at § 163.059. The phrase "temporarily suspended" is not defined in the MPA.

On June 20, 2003, pursuant to Texas Occupations Code § 164.059, the Disciplinary Panel concluded that Maynard's "continuation in the practice of medicine would constitute a continuing threat to the public welfare." The Panel issued an order temporarily suspending Maynard's medical license; the temporary suspension remains in effect "until such time as it is superceded by another order of the Board."

We agree that because the Disciplinary Committee is authorized under state law to enter the temporary suspension order, the Disciplinary Committee constitutes "competent state authority" that is authorized to "suspend" a medical license for purposes of 21 U.S.C. § 824(a)(3). Maynard's contention that the DEA's action is unauthorized because the suspension was imposed by the Disciplinary Committee instead of the Board, and because the suspension was temporary, is not well-taken.

The second element in section 824(a)(3) is that the practitioner is no longer

5

authorized under state law to dispense controlled substances. In its final order, the DEA found that DPS revoked Maynard's controlled substance registration. Under the Texas Controlled Substances Act ("Texas CSA"), only properly registered individuals may dispense controlled substances in Texas. TEX. HEALTH & SAFETY CODE § 481.061. The Texas CSA authorizes the Director of DPS to "cancel, suspend, or revoke a registration, place on probation a person whose license has been suspended, or reprimand a registrant for a cause described by Section 481.063(e)." Id. at § 481.066(b). Section 481.063(e) permits the Director to deny an application to dispense controlled substances upon a finding that the applicant "has had suspended, probated, or revoked a registration or a practitioner's license under the laws of this state or another state." Id. at § 481.063(e)(4). The state due process requirements for licences, set forth at Texas Government Code § 2001.054, do not apply to suspension and revocations pursuant to Texas Health & Safety Code § 481.063(e)(4). Id. § 481.066(h).

When the Disciplinary Panel temporarily suspended Maynard's medical license, the DPS properly revoked Maynard's state controlled substance registration. The elements of 21 U.S.C. § 824(a)(3) having been thus satisfied, DEA properly concluded that Maynard was not authorized by Texas to dispense controlled substances.

The DEA is correct in its contention that even assuming arguendo that the Disciplinary Panel and the DPS violated Texas due process, the DEA properly relied upon their actions. The DEA need not inquire into the validity of a state licensing agency's decisions under § 824(a)(3). See George S. Heath, M.D., 51 Fed. Reg. 26610 (July 24, 1986)

6

("DEA accepts as valid and lawful the action of a state regulatory board unless that action is overturned by a state court or otherwise pursuant to state law."). The DEA's revocation action would only be invalid if the alleged state agency errors rose to the level of a federal due process violation, which it does not. "[I]n the exercise of its broad powers to regulate all health professions, the state may temporarily suspend a license to practice medicine without a hearing when it believes that the physician's continuation in practice may constitute an immediate danger to his patients or to the public." Waltz v. Herlihy, 682 F. Supp. 501, 508 (D. Ala. 1988), aff'd, 871 F.2d 123 (11th Cir. 1989) (citing Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n, 426 U.S. 482, 494 (1976); Mathews v. Eldridge, 424 U.S. 319 (1976)). As in Waltz, the denial of a pre-deprivation hearing in Maynard's case did not constitute a denial of constitutional due process.

Maynard also argues that the DEA's revocation of his registration was an "extreme sanction" and was "arbitrary, capricious, and an abuse of discretion." As discussed above, the plain language of the statute permits the DEA to revoke a practitioner's registration when the practitioner's state license has been revoked and he is no longer authorized by the state to handle controlled substances. The DEA cites several instances[1] where it has construed the CSA to require revocation when a registrant no longer possesses valid state authority to handle controlled substances. We agree with their argument that it may have

---

[1] Marlou Davis, M.D., 69 Fed. Reg. 1307, 1310 (Jan. 8, 2004) (DEA lacks statutory authority to maintain a registration if the individual is without state authority to handle controlled substances); Kenneth Wilson, D.D.S., 46 Fed. Reg. 25018 (May 4, 1981) (same); James Mitchell, M.D., 44 Fed. Reg. 71466 (Dec. 11, 1979) (same).

been arbitrary and capricious had the DEA failed to revoke Maynard's registration under the circumstances.

B.     The DEA afforded Maynard proper notice by mailing the order to show cause to his registered location.

Maynard argues that he was not afforded proper notice for due process purposes because the show cause order was not properly served.  The DEA mailed the order to show cause by certified mail, return receipt requested, to Maynard's registered address. This procedure patently satisfies the requirements of due process set out by the Supreme Court in Mullane v. Central Hanover Bank & Trust Co.:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [citation omitted].
> . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . .

339 U.S. 306, 314–15 (1950) (emphasis added).

The method used by the DEA in this case was reasonable under the Mullane standard.  The DEA used Maynard's registered address, the only address that has significance under the CSA.  "Under the CSA, the place of conducting the registrant's business is important, as the CSA further provides that '[a] separate registration shall be required at each principal place of business or professional practice where the applicant . . . dispenses controlled substances . . . .'" Wedgewood Vill. Pharm., Inc. v. Ashcroft, 293 F. Supp. 2d 462, 467 (D.N.J. 2003) (quoting 21 U.S.C. § 822(e)).

8

Maynard argues that the DEA's method of service did not meet the requirements set out by Rule 4 of the Federal Rules of Civil Procedure, but the Supreme Court has never established the notice provisions of the Federal Rules as the constitutional threshold to satisfy due process. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 801–01 (1983) (O'Connor, J., dissenting) (noting that, in general, type of notice will vary depending on the circumstances). We hold that the DEA's method of service was reasonably calculated to provide Maynard notice of the action, and was constitutionally adequate.

## IV. CONCLUSION

For the foregoing reasons, we Maynard's petition for review is DENIED and the DEA's decision is AFFIRMED.